UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KRISTEN KING

                       Plaintiff,                         Index No. 1:19-cv-00077-GWC

      v.

ARAMARK SERVICES, INC.

                       Defendant.

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

Plaintiff, by and through her attorneys, Greco Trapp, PLLC, respectfully submits this Memorandum of Law in opposition to Defendant's partial Motion to Dismiss pursuant to FED. R. CIV. P. 12(b)(6).

### Statement of Facts

Plaintiff, Kristen King (hereinafter "Plaintiff") brings six causes of action against Defendant, Aramark Services, Inc. (hereinafter "Defendant"), sounding in discrimination, retaliation, and hostile work environment under both Title VII and the New York State Human Rights Law (hereinafter "NYSHRL"). *See generally* Compl. The Complaint contains specific, factual allegations supporting each cause of action.

Plaintiff is a long-standing New York resident. *See* Compl ¶ 3. Her career with Defendant began in or about June 2006 in Buffalo, New York, where Plaintiff worked as Director of Food and Nutrition at Defendant's operation at Buffalo General Hospital, one of Defendant's many Western New York locations. *See id.* ¶¶ 10-11. In or a about June 2010, Defendant lost its contract at Kaleida Health, after which Plaintiff pursued and obtained a Master of Science degree from

Buffalo State College.  *See id*. ¶ 12.  After that, while residing solely in New York, Plaintiff reached out to former colleagues to see what employment opportunities may be available with Defendant. *See id*. ¶ 12.  Ultimately, Defendant rehired Plaintiff and assigned her to its operations at Valley Health System (hereinafter "VHS"), a group of six member hospitals spread across Virginia and West Virginia.  *See id*. ¶ 12.

After accepting this position, Plaintiff rented a second home in Stanley, Virginia, while also maintaining a residence in Hamburg, New York.  *See id*. ¶ 15.  With Defendant's approval, Plaintiff, on a regular basis, performed her job duties from her New York home office.  *See id*. ¶¶ 15-16, 18.  From between December 2015 and March 2016, Plaintiff worked exclusively from her New York home office.  *See id*. ¶¶ 24-25.

In or about February 2015, Defendant promoted Griffith Thomas to District Manager, and he became Plaintiff's direct supervisor.  *See id*. ¶ 21.  Griffith Thomas subjected Plaintiff to different terms and conditions of employment because of her sex, harassed her because of her sex, created a sex-based hostile work environment, retaliated against her for her numerous complaints of harassment, discrimination, and retaliation, and terminated her because of her sex and in retaliation for her numerous complaints.  *See id*. ¶ 22.

After becoming Plaintiff's direct supervisor, Griffith Thomas treated similarly situated male employees—including but not limited to Christopher Harriman, Thomas DeGori, John Wilson, Timothy Knight, Jacob Williford, and Brian Marsh—more favorably than Plaintiff.  *See id*. ¶¶ 24-26, 28-29, 32-33, 37, 42-43, 46, 51, 54, 61, 62, 64-65, 68.  Griffith Thomas also transferred portions of Plaintiff's job duties to Jacob Williford.  *See id*. ¶¶ 26, 66.   The Complaint alleges that Griffith Thomas also subjected the multiple other female employees to discrimination, harassment, and retaliation, including: Allison Siegel, Heather Rizzo, Sondra Davis, Heather

O'Neil, Penny Curry, Teresa Davis, and Charlene Hite. *See id.* ¶ 47, 75. Finally, Griffith Thomas used gender-based insults against Plaintiff, demeaning her in front of coworkers. *See id.* ¶¶ 52, 62.

Griffith Thomas's conduct, and Defendant's failure to act, resulted in the terms and conditions of Plaintiff's employment being altered for the worse. For example, in addition to the conduct referenced in the above-paragraph, Defendant permitted Griffith Thomas to undermine Plaintiff's authority (*see* Compl. ¶¶ 24, 25, 28, 29, 32, 33, 35, 37, 40-44, 47, 50, 51, 53, 54, 62, 70); deprive her of training (*see id.* ¶¶ 45, 46, 68, 71); alienate her (*see id.* ¶¶ 25, 32, 35, 47, 50, 54, 62, 66, 70); and exclude her (*see id.* ¶¶ 25, 32, 35, 47, 50, 54, 62, 66, 70).

Notably, some of Defendant's unlawful conduct was directed at Plaintiff in New York and, therefore, had an impact in New York. Initially, Plaintiff's significant work from her New York home office meant that Defendant's unlawful conduct impacted the terms and conditions of her employment in New York. *See id.* ¶¶ 15, 18, 23-25, 29, 51. The Complaint contains specific allegations referencing this New York impact. For example, while Plaintiff was in New York, Griffith Thomas discriminatorily denied her an extension of time to complete her team's performance reviews (*id.* ¶ 23); questioned the legitimacy of her need to work remotely and her son's illness (*id.* ¶ 25); demanded that she visit all VHS facilities immediately upon returning to Virginia (*id.* ¶ 29); and revoked Plaintiff's authorization to work from New York (*see id.* ¶ 51).

After Griffith Thomas issued Plaintiff discriminatory and retaliatory written discipline on or about: August 29, 2016; September 26, 2016; March 24, 2017; and May 9, 2017, on or about September 21, 2017, Defendant, on Griffith Thomas's decision, terminated Plaintiff. *See id.* ¶¶ 40, 42, 53, 61, 72. Following this unlawful termination, Plaintiff left Virginia and returned to her fixed, permanent home in New York. *See id.* ¶ 74. Thereafter, Defendant continued to

discriminate, harass, and retaliate against her in New York by denying her request to return a company laptop to one of Defendant's many Western New York facilities, and, instead, demanding that she drive to Virginia to return the laptop.  *See id.*

Despite these allegations, Defendant moves to dismiss Plaintiff's NYSHRL causes of action (Second, Fourth, and Sixth), her discrimination causes of action (First and Second), and her hostile work environment causes of action (Fifth and Sixth).  For the reasons stated below, Defendant's pre-answer motion should be denied in its entirety.

## Legal Standard

The Second Circuit's current interpretation of the pleading standard in employment discrimination cases is that a plaintiff has only a " '*minimal* burden' of alleging facts suggesting an inference of discriminatory motivation," and "pleading a prima facie case is not required." *Vega v. Hempstead Union Free School Dist.*, 801 F.3d 72, 85 (2d Cir. 2015) (emphasis in original); *see Hedges v. Town of Madison*, 456 Fed. App'x 22, 23 (2d Cir. 2012); This rule flows from the Supreme Court's holding in *Swierkiewicz v. Sorema* (534 U.S. 506 (2002)), in which "the Supreme Court held that plaintiffs need not plead a prima facie discrimination claim to withstand Rule 12(b)(6) dismissal." *Regan v. Benchmark Co. LLC*, No. 11 Civ. 4511, 2012 WL 692056, at \*7 (S.D.N.Y. Mar. 1, 2012).  The Western District of New York applies this reduced pleading standard and will only "review [a] [p]laintiff's claims to determine whether they are facially plausible and give fair notice to Defendants as to their bases." *Kleehammer v. Monroe County*, 743 F. Supp. 2d 175, 183 (W.D.N.Y. 2010) (Siragusa, J.); *see Stokes v. Nestle Purina Petcare Co.*, No. 12—CV—89, 2012 WL 3746810, at \*5 (Skretny, C.J.).

Additionally, in deciding a FED. R. CIV. P. 12(b)(6) motion, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994).  "The complaint may

4

be dismissed only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief." *Id.* (internal quotation marks omitted); *see also Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 44 (2d Cir. 2003). "This standard is applied with even greater force where the plaintiff alleges civil rights violations." *Hernandez*, 19 F.3d at 136. Thus, the standard is "generous," and "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999) (internal quotation marks omitted).

Moreover, a trial court cannot consider matters outside the pleadings on a Rule 12(b)(6) motion.

> [W]hen matters outside the pleadings are presented in response to a 12(b)(6) motion, a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material.

*Friedl v. City of New York*m 210 F.3d 79, 83 (2d Cir. 2000) (internal quotation marks omitted); *see also* FED. R. CIV. P. 12(d) (If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.).

Although Rule 12(b)(6) does allow a court to consider a document "incorporated by reference" or "integral" to the pleadings, a court may consider only documents "absolutely central" to a complaint. *F.D.I.C. v. U.S. Mortg. Corp.*, 132 F. Supp. 3d 369, 380 (E.D.N.Y. 2015). Contrary to Defendant's contention, "in order for extrinsic evidence to be considered on a Rule 12(b)(6) motion, it is 'a necessary prerequisite' that the ' plaintiff [have] rel[ied] heavily on the terms and effect of the document[s] in drafting the complaint . . . ; **mere notice or possession is**

**not enough**.' " *Id.* (quoting *Global Network Communications, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006)); *see Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir 2002) (noting "mere notice or possession is not enough").  Thus, where a "complaint is not replete with references or quotations to [a] document," the court may not consider that document on a Rule 12(b)(6) motion.  *Pollock v. Ridge*, 310 F. Supp. 2d 519, 524 (W.D.N.Y. 2004) (Larimer, J.).  Even then, "[i]t must also be clear that there exist no material disputed issues of fact regarding the relevance of the document."  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (internal quotation marks omitted).

<u>**Argument**</u>

Defendant's motion should be denied in its entirety.  (1) Defendant's Rule 12(b)(6) motion should be denied because the Complaint's allegations allow for the plausible inference that the NYSHRL provides Plaintiff a private cause of action against Defendant.  (2) Defendant's Rule 12(b)(6) motion should be denied because the Complaint alleges substantial facts supporting the inference that Defendant was motivated by discriminatory intent.   And (3) Defendant's Rule 12(b)(6) motion should be denied because the Complaint alleges substantial facts supporting the inference that Defendant subjected Plaintiff to a severe or pervasive hostile work environment because of her sex.

**1.      Defendant's Rule 12(b)(6) motion should be denied because the Complaint's allegations allow for the plausible inference that the NYSHRL provides Plaintiff a private cause of action against Defendant.**

Defendant's Rule 12(b)(6) motion should be denied because the Complaint's allegations allow for the plausible inference that the NYSHRL provides Plaintiff a private cause of action against Defendant.  NYSHRL § 298-a(1) sets forth the extraterritorial reach of that statute and provides: "The provisions of this article shall apply as hereinafter provided to an act committed

outside this state **against a resident of this state** . . . , if such act would constitute an unlawful discriminatory practice if committed within this state." When the NYSHRL's territorial scope recently came before the New York Court of Appeals on a certified question from the Second Circuit, the New York Court of Appeals wrote:

> We have held that "[t]he obvious intent of the State Human Rights Law is to protect 'inhabitants' and persons 'within' the state, meaning that those who work in New York fall within the class of persons who may bring discrimination claims in New York" (*Hoffman v Parade Publs.*, 15 NY3d 285, 291 [2010]). In particular, the extraterritoriality provision "protects New York residents . . . from discriminatory acts committed outside the state" (*id*. at 292). To prevail, the injured party "must plead and prove that the alleged discriminatory conduct had an impact in New York" (*id*. at 291).

*Griffin v Sirva, Inc.*, 29 N.Y.3d 174, 188 (2017) (emphasis added). Notably, the Court of Appeals applied this rule and held that the NYSHRL allowed the plaintiffs to maintain private causes of action against the two defendant foreign business corporations. *See id*. (allowing causes of action against Illinois companies: Sirva, Inc., and Allied Van Lines, Inc.).

Here, the Complaint plausibly alleges Defendant's liability under the NYSHRL with facts going to the two issues relevant under *Griffin*: Plaintiff's New York residence and the New York impacts of Defendant's discriminatory conduct.

Going to the first issue—Plaintiff's New York residence—the Complaint plausibly alleges Plaintiff's New York residence, especially given that courts interpret the NYSHRL as providing a cause of action to New York domiciliaries. *See Torrico v. International Business Machines Corp.*, 213 F. Supp. 2d 390, 407-08 (S.D.N.Y. 2002). Thus, a New York domiciled plaintiff, is a " 'resident' within the meaning of the NYHRL—*regardless of* where [s]he was employed—and is therefore protected under the extraterritorial provision of § 298–a(1)." *Id*. (emphasis in original). Given that domicile "refers to 'one's principal and permanent place of residence where one always

7

intends to return to from wherever one may be temporarily located, and from which one has no present intention of moving' " (*id*. (quoting 49 N.Y. Jur.2d Domicil & Residence § 2)), the Complaint contains allegations establishing that, although Plaintiff maintained both Virginia and New York residences, New York was her domicile.  Specifically, the Complaint alleges that Plaintiff resided in Hamburg, New York (Compl. ¶ 3); her career with Defendant began in Buffalo, New York (*id*. ¶ 9); during her entire employment with Defendant, she maintained a home in New York (*id*. ¶ 14, 18, 23, 25, 51); and after Defendant terminated Plaintiff, she returned to her fixed, permanent home in New York (*id. ¶* 74).

Thus, the Complaint adequately alleges Plaintiff's New York residence and domicile, entitling her to NYSHRL private causes of action.  Because Plaintiff was/is a New York domiciliary and resident, all of the authorities that Defendant relies on regarding this issue are inapplicable here, as the cases do not involve New York residents.  *See e.g. Maines v. Last Chance Funding, Inc.*, 2:17—cv—05453, 2018 WL 4558408, at *8 (E.D.N.Y. Sept. 21, 2018) (Georgia resident could not maintain NYSHRL claims); *Torrico v. International Business Machines Corp.*, 319 F. Supp. 2d 390, 398 (S.D.N.Y. 2002) (plaintiff has no NYSHRL causes of action because he "is not, and never has been, a resident or domiciliary of New York"); *Iwankow v. Mobil Corp.*, 150 A.D.2d 272 (1st Dept. 1989) (Canadian citizen and London resident could not maintain NYSHRL claims).

For several reasons, the Court cannot consider the extrinsic evidence that Defendant offers in support of its Rule 12(b)(6) motion.  *See* Dkt 5-3 (resume, undated); Dkt. 5-4 (Form I-9, dated August 29, 2017).  First, FED. R. CIV. P. 12(d) instructs that these documents cannot be considered, given that the Complaint does not reference or incorporate these documents, and Plaintiff did not rely on, let alone "heavily" rely on them in drafting her Complaint.  *See Chambers*, 282 F.3d at

153; *F.D.I.C.*, 132 F. Supp. 3d at 380; *Pollock*, 310 F. Supp. 2d at 524.  Additionally and contrary to Defendant's position, these extrinsic documents are not proper for judicial notice, as they are not public documents, matters of public record, or documents related to a judicial/administrative body.  *See* FED. R. EVID. 201; *Finn v. Barney*, 471 Fed. App'x 30, 32 (2d Cir. 2012).  Additionally, the documents cannot be considered because Plaintiff disputes the relevance of these documents. *See DiFolco*, 622 F.3d at 111.

With respect to the Form I-9 (Dkt. 5-4), that document is dated August 29, 2017—only 23 days before Defendant terminated Plaintiff—and is, therefore, not relevant to her residences throughout her employment.  Moreover, the Form I-9 provided space for Plaintiff to list only one residence.  The form, therefore, lacks probative value on the central question of Plaintiff's New York residence and domicile.  Insofar as the Form I-9 lists Virginia as the state that issued Plaintiff's drivers' license, the document is not relevant insofar as it does not indicate when Plaintiff obtained a Virginia license and for how long before that her drivers' license was issued by New York.

With respect to the resume (Dkt. 5-3), that document is undated and was generated at some point after Plaintiff had already joined Defendant's operations at VHS.  *See id*.  The resume, therefore, is not relevant to show Plaintiff's address when applying for re-employment with Defendant.  In fact, the resume actually supports Plaintiff's position that she was domiciled in New York with indications that, but for her VHS placement, her secondary education and entire career was in New York.  *See* Dkt. 5-3.  Moreover, had Defendant not selectively redacted the cellular number on this resume—which it had no obligation to do under FED. R. CIV. P. 5.2—the number displayed would have been a 716 area code, providing evidence that Plaintiff was a New York resident.

Going to the second issue—New York impact—the Complaint plausibly alleges that Defendant's discriminatory conduct impacted Plaintiff in New York.  To show impact in New York, the Complaint need only allege that Defendant's conduct affected "the terms, conditions, or privileges of employment . . . within New York."  *International Healthcare Exchange, Inc. v. Global Healthcare Exchange, LLC*, 470 F. Supp. 2d 345, 362 (S.D.N.Y. 2007) (internal quotation marks omitted) (finding that having a workplace in New York brought the conduct within the scope of the NYSHRL).  And where an employee works across multiple states, a motion to dismiss should be denied where there are allegations that a portion of the employer's conduct had a New York impact.  *See Bass v. World Wrestling Federation Entertainment, Inc.*, 129 F. Supp. 2d 491, 505-06 (E.D.N.Y. 2001).  Thus, where a plaintiff alleges work from a New York home office, her complaint alleges a sufficient New York impact and should not be dismissed.  *See e.g. Taperell v. Tegan Lighting, Inc.*, 18—CV—3343, 2019 WL 1118053, at *2-3 (E.D.N.Y. Mar. 11, 2019); *International Healthcare Exchange, Inc.*, 470 F. Supp. 2d at 362; *Curto v. Medical World Communications, Inc.*, 388 F. Supp. 2d 101, 106-07 (E.D.N.Y. 2005) (denying motion to dismiss where complaint alleged work in New York home office).

With this background, the following allegations in the Complaint show that Defendant's unlawful conduct had a New York impact.  Specifically:

- Plaintiff resides in the Town of Hamburg, County of Erie, State of New York.  Compl. ¶ 3.

- Defendant provided Plaintiff with a company laptop for use at her home offices in New York and Virginia.  Compl. ¶ 14.

- Plaintiff, on a regular basis, performed Defendant's work from her home office in Hamburg, New York.  Defendant agreed that Plaintiff could work from her New York home office.  Compl. ¶ 15.

- From April 2012 through December 2015, Defendant on a regular basis, authorized Plaintiff to work from her New York home office, as needed to allow her to care for her ill son.  Given that her job duties required that she be available on an as needed basis, she regularly performed Defendant's business while in her New York home office, and Defendant authorized her to do this.

For example, Plaintiff read and responded to emails; conducted conference calls; reviewed data; made business decisions; and analyzed business reports.  Compl. ¶ 18.

- From between December 2015 and March 2016, Plaintiff worked exclusively from her New York home office and regularly performed Defendant's work.  Compl. ¶ 23.

- During this time and while Plaintiff was working from her New York home office, Griffith Thomas discriminatorily denied her request for an extension of time to complete her team's performance reviews in 2015.  Compl. ¶ 24.

- Griffith Thomas made frequent efforts to communicate with Plaintiff about her job duties, and he made clear to her that he was unhappy about the work that was backing up because of her absence. Griffith Thomas intentionally reached out to Plaintiff in New York with these communications. While Plaintiff was in New York, Griffith Thomas also criticized her and complained about her to other of Defendant's employees, accusing her of and blaming her for being unavailable to work. Additionally, prior to Plaintiff's son's death, Thomas also questioned whether the severity of her son's illness required her to be on leave in discussions with Defendant's management employees. Compl. ¶ 25.

- While Plaintiff was working in her New York home office, Griffith Thomas had emailed her and demanded that, on her first three days back from leave, she visit all VHS facilities, which spanned over two states and 600 miles of travel, with no opportunity to reacclimate back to work.  Griffith Thomas did not require his male direct report, Thomas DeGori, to visit all of his facilities immediately upon returning from a four-week leave after surgery.  Compl. ¶ 29.

- As an act of discrimination, harassment, and retaliation, Griffith Thomas advised Plaintiff that he would no longer allow her to work from her home office.  Prior to this instruction, Plaintiff had, for years, worked from her New York and Virginia home offices on about a once weekly basis, taking the time to catch up on data review and paperwork.  Compl. ¶ 51.

- Even after Defendant terminated Plaintiff, it continued to discriminate, harass, and retaliate against her.  For example, Defendant failed to provide Plaintiff with materials necessary to return her company laptop by mail, despite Plaintiff's requests for the necessary material.  Instead, on or about November 14, 2017, Defendant contacted Plaintiff at her New York home office and directed Plaintiff to return a company laptop to Virginia.  Defendant made this demand despite being aware that Plaintiff had left Virginia.  When Plaintiff offered to return the laptop to one of Defendant's many Wester New York facilities, Defendant refused to let her do so, forcing her to return to Virginia as a further act of discrimination, harassment, and retaliation.

Defendant inaccurately cites cases for the proposition that NYSHRL does not provide "a cause of action to a New York resident for discriminatory acts committed outside of New York by a foreign corporation."  *See* Dkt. 5-1 at 12-13 (citing *Cutro*, *Hammell*, *Beckett*, *Blundell*, and *Iwankow*).  These cases, however, are inapplicable here, as they address the NYSHRL's

11

administrative remedy provision, i.e., that the NYSHRL also provides an administrative remedy, rather than a private cause of action, for New York residents where an employer's conduct has no impact in New York.  *See Taperell*, 2019 WL 111805 at *2.  However, where, like here, the conduct does have an impact in New York, a private cause of action exists.  *See id.* (discussing framework for administrative remedy versus private cause of action); *see also Ulrich v. Moody's Corp.*, 13 Civ. 0008, 2014 WL 12776746, at *16 (S.D.N.Y. Mar. 31, 2014) (noting that private cause of action turns on New York impact).

Thus, Defendant's Rule 12(b)(6) Motion to Dismiss Plaintiff's NYSHRL causes of action (Second, Fourth, and Sixth) should be denied because the Complaint's allegations allow for the plausible inference that the NYSHRL provides Plaintiff a private cause of action against Defendant.

**2.    Defendant's Rule 12(b)(6) motion should be denied because the Complaint alleges substantial facts supporting the inference that Defendant was motivated by discriminatory intent.**

Defendant's Rule 12(b)(6) motion should be denied because the Complaint alleges substantial facts supporting the inference that Defendant was motivated by discriminatory intent. Notably, "[t]he facts required by *Iqbal* to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination.  They need only give plausible support to a **minimal inference** of discriminatory motivation."  *Fisher v. Jenks*, No 9:13—CV—0213, 2015 WL 4890556, at *9 (N.D.N.Y. Aug. 17, 2015) (emphasis added); *see* also *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015) (noting that allegations "need only give plausible support to a minimal inference of discriminatory motivation").  Additionally, "[c]ourts making the plausibility determination should do so 'mindful of the elusive nature of intentional discrimination' and the frequency by which plaintiffs must 'rely on bits and pieces of information to support an inference of discrimination, i.e., a mosaic of

intentional discrimination.' " *Caputo v. Copiague Union Free School District*, 218 F. Supp. 3d 186, 191 (E.D.N.Y. 2016) (quoting *Vega*, 801 F.3d at 86-87).

The Complaint contains a robust "mosaic of intentional discrimination" with allegations regarding going to the relevant factors that the Second Circuit set forth in *Littlejohn*: (1) the more favorable treatment of employees not in the protected group; (2) that Defendant transferred Plaintiff's job duties to a male coworker; (3) the invidious treatment of others in Plaintiff's protected group; (4) and that Griffith Thomas referred to Plaintiff in gender-based degrading terms. *See Littlejohn*, 795 F.3d at 312.

With respect to the first *Littlejohn* factor, the Complaint plausibly supports an inference of discrimination because the Complaint contains factual allegations regarding "the more favorable treatment of employees not in the protected group." *Littlejohn*, 795 F.3d at 312.  Specifically, the Complaint alleges:

- In early 2016, Griffith Thomas discriminatorily denied Plaintiff's request for an extension of time to complete her team's performance reviews in 2015.  In comparison, when Jacob Williford, Defendant's Unit Controller at VHS and who reported directly to Griffith Thomas at that time, requested a similar extension to complete performance review 2016, Griffith Thomas replied "don't sweat the deadlines."  Compl. ¶ 24.

- Also in early 2016, Griffith Thomas questioned whether the severity of Plaintiff's son's illness required her to be on leave in discussions with Defendant's management employees.  In contrast, Griffith Thomas allowed Jacob Williford to take leave to care for his ill wife—who suffered from a condition similar to Plaintiff's son—without interference and allowed Jacob Williford to work from home often and without any complaint or negative comment.  Compl. ¶¶ 25-26.

- Griffith Thomas micromanaged Plaintiff's operations at VHS but did not micromanage his male direct reports, including but not limited to, Christopher Harriman, Thomas DeGori, and John Wilson.  Griffith Thomas also issued discipline to Plaintiff for conduct that did not violate any of Defendant's policies and for which he did not discipline his male direct reports.  Compl. ¶ 28

- In early 2016, prior to Plaintiff's return to work from leave and while she was working in her New York home office, Griffith Thomas had emailed her and demanded that, on her first three days back from leave, she visit all VHS facilities, which spanned over two states and 600 miles of travel, with no opportunity to reacclimate back to work.  Griffith Thomas did not require his male direct

report, Thomas DeGori, to visit all of his facilities immediately upon returning from a four-week leave after surgery. Compl. ¶ 29.

- Griffith Thomas removed Jacob Williford from reporting to Plaintiff and made him a direct report to Griffith Thomas. Griffith Thomas then utilized approximately 50% of Jacob Williford's time managing the financials and assisting Griffith Thomas's male direct reports at facilities outside of VHS. Plaintiff lost approximately 50% of Jacob Williford's services while incurring 100% of his costs under her VHS budget, impacting her overall performance. Other direct reports, such as Christopher Harriman, Thomas DeGori, and John Wilson then received Jacob Williford's services without bearing any of the cost. Compl. ¶ 32.

- Griffith Thomas did not arrange for or provide support for several of the VHS facilities Plaintiff was responsible for while she was out on leave for about three months. In contrast, when male direct report, Thomas DeGori, was out on an approximately four-week leave after a surgery in 2017, Griffith Thomas ensured that Thomas DeGori's facilities had daily coverage by general managers, directors, and/or managers. In fact, Griffith Thomas required Plaintiff to provide VHS employees to Thomas DeGori's facilities to provide staffing and coverage and that she, herself, act in Thomas DeGori's place on multiple occasions. Compl. ¶ 33.

- In or about May 2016, Griffith Thomas advised Plaintiff that she would no longer be dual General Manager of Food and EVS and would be General Manager, Food only due to a company-wide restructuring. In comparison, Griffith Thomas permitted male General Manager, John Wilson, to remain as Dual General Manager of Food and Valet. Also, male General Manager, Brian Marsh, at UPMC Susquehanna, who reported to a different District Manager, remained in his role as dual General Manager of Food and EVS. Compl. ¶ 37.

- On or about September 29, 2016, Plaintiff received written discipline for conduct for which Griffith Thomas did not discipline male direct reports, including but not limited to, Christopher Harriman, Thomas DeGori, and/or John Wilson. Compl. ¶ 42.

- On or about September 29, 2016, Plaintiff received written discipline related to EVS operations, which were Timothy Knight's responsibility and no longer Plaintiff's responsibility as of May 2016, and that Timothy Knight did not receive discipline for such conduct. Compl. ¶ 43.

- Griffith Thomas required Plaintiff to complete a "Top 15" report with respect to each of her facilities without having provided a Top 15 training. At that time, Griffith Thomas did not require direct reports, including but not limited to Christopher Harriman, Thomas DeGori, and John Wilson to complete Top 15 reports. Thereafter, when Griffith Thomas later required male direct reports to complete Top 15 reports, he provided a thorough Top 15 training on a conference call via a PowerPoint Presentation. Compl. ¶ 46.

- In or about March 2017, Griffith Thomas advised Plaintiff that he would no longer allow her to work from her home office. In comparison, Griffith Thomas continued to allow Jacob Williford to work from his home office, which was less 10 miles from WMC, where he had a designated office. Compl. ¶ 51.

14

- Griffith Thomas required that Plaintiff obtain his approval for any financial decisions exceeding $1,000.00, which required Griffith Thomas's increased oversight and approval, given that her unit did about $10,000,000.00 in business annually.  In comparison, Griffith Thomas did not require male direct reports to obtain approval for these types of financial decisions.  Compl. ¶ 54.

- On or about May 9, 2017, Griffith Thomas issued Plaintiff written discipline for conduct for which he did not issue discipline to male direct reports, Christopher Harriman, Thomas DeGori, and John Wilson, who engaged in similar conduct.  Compl. ¶ 61.

- In or about Summer 2017, Griffith Thomas held meetings with Plaintiff's clients without her presence and without notifying her.  In comparison, Griffith Thomas ensured that male direct reports, including but not limited to, Christopher Harriman, Thomas DeGori, and John Wilson attended client meetings.  Compl. ¶ 62.

- In or about Summer 2017, Griffith Thomas directed that Plaintiff meet deadlines that he did not require other male direct reports to meet.  For example, Griffith Thomas required that Plaintiff meet a deadline for the "Treat Yourself Program" that he did not require Thomas DeGori to meet.  Also, Griffith Thomas did not require Christopher Harriman to implement this program at one of his facilities.  Compl. ¶ 64.

- Griffith Thomas did not support Plaintiff in preparing and giving key presentations for clients.  In comparison, he did provide this support to male direct reports such as Christopher Harriman when tasked with giving key presentations.  Compl. ¶ 65.

- Griffith Thomas failed to meet with Plainitff weekly or biweekly to discuss progress on the PIP, as required under Defendant's policy and procedure.  In comparison, Griffith Thomas worked with male direct report, Thomas DeGori, on his performance in advance of any discipline or written improvement plan and directed Plaintiff to provide assistance to Thomas DeGori.  Compl. ¶ 68.

The Complaint also plausibly alleges that these comparator male employees were similarly situated to Plaintiff.  "At the pleading stage, allegations that the plaintiff and comparators worked in the same group and were accountable to the same supervisors, but were subjected to disparate treatment may be sufficient to raise an inference of discrimination."  *Pothen v. Stony Brook University*, 211 F. Supp. 3d 486, 485 (E.D.N.Y. 2016) (citing *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 229-30 (2d Cir. 2014)); *see also Deras v. Metropolitan Transp. Authority*, No. 11—CV—5912, 2013 WL 1193000, at *10 (E.D.N.Y. 2013) (noting that employees are similarly situated where they "are holding the same positions of roughly the same rank, and being subject to the same performance review and disciplinary standards").  "[O]rdinarily, whether two employees are

similarly situated . . .  presents a question of fact, rather than a legal question to be resolved on a motion to dismiss."  *Brown*, 756 F.3d at 230 (internal quotation marks omitted).

Thus, Defendant's argument that Plaintiff "has not identified any similarly situated male comparators" (Dkt. 5-1 at 17) is without merit.  Specifically, the Complaint alleges that Christopher Harriman, Thomas DeGori, and John Wilson were similarly situated in that they were "Griffith Thomas's other direct reports who managed more than one unit."  Compl. ¶¶ 22, 38.  The Complaint plausibly alleges that Jacob Williford was similarly situated to Plaintiff in that he also "reported directly to Griffith Thomas" and worked at VHS.  *Id.* ¶ 24.  And the Complaint plausibly alleges that Brian Marsh and Timothy Knight were similarly situated to Plaintiff in that, although they reported to a different managers, these male employees held roughly the same rank and were subject to the same performance review and disciplinary standard.  *See id.* ¶ 37 (noting Marsh's role as a dual GM and Knight's rile as DM).

With respect to the second *Littlejohn* factor, the Complaint also plausibly supports an inference of discrimination because the Complaint contains factual allegations that Defendant transferred Plaintiff's job duties to a male coworker.  *See Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 135 (2d Cir. 2000); *see also Littlejohn*, 795 F.3d at 312-13 (collecting cases).  Thus, the Complaint's factual allegations that Plaintiff "would later learn that Griffith Thomas was using Jacob Williford to perform many of her job duties in an effort to replace her" (Compl. ¶ 26) and that Griffith Thomas used Jacob Williford to replace Plaintiff with respect to the VHS Proposal (*id.* ¶ 66) sufficiently give rise to an inference of discrimination.

With respect to the third *Littlejohn* factor, the Complaint also plausibly supports an inference of discrimination because the Complaint contains factual allegation regarding the

invidious treatment of others in Plaintiff's protected group.  *See Littlejohn*, 795 F.3d at 312.

Specifically, the Complaint alleges that Defendant

> also subjected other female directors, managers and supervisors, including but not limited to Allison Siegel, Director of Food; Heather Rizzo, Manager of EVS; Sondra Davis,  Director of EVS; Heather O'Neil, Director of Food and EVS; Penny Curry, Director of Food; Teresa Davis, Supervisor of EVS; and Charlene Hite, Supervisor EVS, to discrimination, harassment, hostile work environment, and retaliation based on their sex and complaints of discrimination, harassment, hostile work environment, and retaliation.

Compl. ¶ 75; *see also id*. ¶ 47 (discussing discrimination and retaliation against Heather Rizzo).

Finally, with respect to the fourth *Littlejohn* factor, the Complaint supports an inference of discrimination because Griffith Thomas referred to Plaintiff in gender-based degrading terms.  *See Littlejohn*, 795 F.3d at 312.  Specifically, courts have held that comments about an employee's weight can be gender-based because they are "specifically degrading to a woman." *See e.g. Kanios v. UST, Inc.*, No. 3:03CV369, 2005 WL 3579161, at *4 (D. Conn. Dec. 30, 2005); *see also Forrest v. Brinker Intern. Payroll Co., LP*, 511 F.3d 225, 227-28 (1st Cir. 2007) (telling an employee that "she was fat and needed to go to the gym" was evidence discriminatory intent); *Sawka v. ADP, Inc.*, CASE NO. 3:13—cv—754, 2015 WL 5708571, at *11 (D. Conn. Sept. 29, 2015).

Thus, the following allegations allow the plausible inference of intentional discrimination:

- On multiple occasions, Griffith Thomas looked at Plaintiff's lunch tray and said "wow you must be hungry," would stare with disapproval at her midsection, and say that she should visit the fitness center.  On a few occasions, Griffith Thomas said that Plaintiff should visit the fitness center early in the morning because the VHS CEO, Mark Merrill, was there at that time and would like to see that she was exercising.  Compl. ¶ 52.

- In or about May 2017, Griffith Thomas also made additional demeaning and disparaging comments about Plaintiff's weight.  Compl. ¶ 62.

17

These comments also demonstrate that Defendant's argument that Plaintiff has not alleged "any comments during her employment . . . indicating that the decision was based on gender" (Dkt. 5-1 at 17) is factually inaccurate.

Defendant cannot avoid the plausible inference of discrimination that arises from these specific, factual allegations simply by noting that a female Human Resources employee, Kelly Barrett, was on the telephone call during which Defendant terminated Plaintiff.  This is because the inference against discrimination "where the person who participated in the allegedly adverse decision is also a member of the same protected class" applies only to ultimate decision-makers. *Drummond v. IPC Intern., Inc.*, 400 F. Supp. 2d 521, 532 (E.D.N.Y. 2005) (applied to person who "made the decision to terminate"); *see also Szewczyk v. City of New York*, 15—CV—918, 2016 WL 3920216, at *7 n.7 (E.D.N.Y. Jul. 14, 2016) (applied to interviewers in a failure to hire case); *Zuffante v. Elderplan, Inc.*, No. 02 Civ. 3250, 2004 WL 744858, at *6-7 (S.D.N.Y. Mar. 31, 2004) (applied to ultimate decision-maker).  Additionally, this inference is "not dispositive."   *Testa v. CareFusion*, 305 F. Supp. 3d 423, 436 (E.D.N.Y. 2018).

Taken as a whole, the Complaint clearly alleges that Plaintiff's direct supervisor, Griffith Thomas, was the ultimate decision-maker and actor with discriminatory animus and intent. Specifically, the Complaint clearly alleges that, setting the stage for Plaintiff's termination: Griffith Thomas issued Plaintiff written discipline on or about: August 29, 2016; September 26, 2016; March 24, 2017; and May 9, 2017.  *See* Compl. ¶¶ 40, 42, 53, 61.  Thus, no inference against discrimination can arise from Kelly Barrett's mere presence on a conference call—on which Griffith Thomas was also present (Compl. ¶ 73)—during which Defendant terminated Plaintiff.

Thus, contrary to Defendant's position, the Complaint contains specific factual allegations giving rise to the inference of discrimination.  Defendant's argument that the Complaint makes

only "conclusory" allegations is devoid of any references to the Complaint, thus failing to indicate which allegations Defendant contends are "conclusory." *See* Dkt. 5-1 at 17-18. Regardless, the cases Defendant cites on this issue are inapposite. *See Lekettey v. City of New York*, 637 Fed. App'x 659, 662 (2d Cir. 2016) (complaint alleged, without facts, that employer's explanation was pretextual); *Dechberry v. New York City Fire Dept.*, 124 F. Supp. 3d 131, 150-51 (E.D.N.Y. 2015) (*pro se* plaintiff alleged no facts and simply checked a box on a *pro se* complaint form); *Gertskis v. U.S. E.E.O.C.*, No. 11 Civ. 5830, 2013 WL 1148924, at *8 (S.D.N.Y. Mar. 20, 2013) (complaint contained no comparator allegations and contained only an unsupported allegation that employees in plaintiff's group were treated unfavorably).

Therefore, Defendant's Rule 12(b)(6) Motion to Dismiss Plaintiff's gender discrimination causes of action (First and Second) should be denied because the Complaint makes specific, factual allegations that support a minimal inference of discriminatory motivation.

**3.    Defendant's Rule 12(b)(6) motion should be denied because the Complaint alleges substantial facts supporting the inference that Defendant subjected Plaintiff to a severe or pervasive hostile work environment because of her sex.**

Defendant's Rule 12(b)(6) motion should be denied because the Complaint alleges substantial facts supporting the inference that Defendant subjected Plaintiff to a severe or pervasive hostile work environment because of her sex. As an initial matter, "hostile work environment claims present mixed question[s] of law and fact that are especially well-suited for jury determination." *Schiano v. Quality Payroll Systems, Inc.*, 445 F.3d 597, 605 (2d Cir. 2006) (internal quotation marks omitted). Thus, "to avoid dismissal under FRCP 12(b)(6), a plaintiff need only plead facts sufficient to support the conclusion that she was faced with harassment . . . of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (internal quotation marks omitted). The Second Circuit has "repeatedly cautioned against setting the bar

too high in this context." *Id.* (internal quotation marks omitted).  "In fact, for the purposes of this motion to dismiss, especially in light of *Swierkiewicz*," even conclusory statements that harassment was gender-based "would probably be adequate" to avoid dismissal.  *Id.*

Defendant incorrectly argues that only sexually explicit or overtly gender-based comments can contribute to Plaintiff's hostile work environment claims.  The Second Circuit has squarely rejected this position.  *See e.g. Moll v. Telesector Resources Group, Inc.*, 760 F.3d 198, 203 (2d Cir. 2014); *Pucino v. Verizon Wireless Communications, Inc.*, 618 F.3d 112, 118-19 (2d Cir. 2010); *Alfano v. Costello*, 294 F.3d 365, 375 (2d Cir. 2002).  Thus, in evaluating a Rule 12(b)(6) motion regarding a hostile work environment claim, a district court must "consider all allegations in the Complaint in their totality, including those that were not sexually offensive in nature.  Sex-based hostile work environment claims may be supported by facially sex-neutral incidents and 'sexually offensive' acts may be facially sex-neutral." *Moll*, 760 F.3d at 200.

Considering "all allegations in the Complaint in their totality" (*Moll*, 760 F.3d at 200), the Complaint plausibly alleges that Plaintiff suffered a hostile work environment sufficiently severe or pervasive to alter the conditions of the victim's employment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993).  Additionally, "[c]ourts have noted that the pervasiveness of harassing conduct is the sort of issue that is often not susceptible of summary resolution." *O'Neal v. State University of New York Health Science Center Brooklyn*, Civil Action No. CV—01—7802, 2003 WL 1524664, at *8 (E.D.N.Y. Mar. 24, 2003) (internal quotation marks omitted). "Indeed, at the pleading stage—prior to any discovery—it would be premature for this court to determine that [Defendant's] conduct was not, as a matter of law, sufficiently severe or pervasive to give rise to a viable hostile work environment claim." *Id.*

Here, the Complaint contains specific allegations of both gender-based and facially sex-neutral incidents that, when combined, create a plausible inference that Defendant subjected Plaintiff to an actionable hostile work environment.

Contrary to Defendant's argument, the Complaint contains allegations of specific, gender-based comments.  *See* Dkt. 5-1 at 14.  Specifically, Griffith Thomas engaged in the following gender-based ridicule:

- On multiple occasions, Griffith Thomas looked at Plaintiff's lunch tray and said "wow you must be hungry," would stare with disapproval at her midsection, and say that she should visit the fitness center.  On a few occasions, Griffith Thomas said that Plaintiff should visit the fitness center early in the morning because the VHS CEO, Mark Merrill, was there at that time and would like to see that she was exercising.  Compl. ¶ 52.

- In or about May 2017, Griffith Thomas also made additional demeaning and disparaging comments about Plaintiff's weight.  Compl. ¶ 62.

*See e.g. Forrest*, 511 F.3d at 227-28; *Sawka*, 2015 WL 5708571 at *1; *Kanios*, 2005 WL 3579161 at *4.  These allegations demonstrate that Defendant is factually inaccurate in contending that Plaintiff simply labels the hostile work environment as "gender based."  Dkt. 5-1 at 14.

Griffith Thomas also engaged in substantial facially sex-neutral conduct, which the trial court must consider in combination with sexually explicit conduct (*Moll*, 760 F.3d at 200), and "neither sex-specific and derogatory terms nor any evidence that sexual desire motivated the harassment is needed to prove an actionable hostile work environment."  *Gregory v. Daly*, 243 F.3d 687, 695 (2d Cir. 2001) (internal quotation marks omitted).  In other words "[c]ourts should avoid disaggregating a hostile work environment claim, dividing conduct into instances of sexually oriented conduct and instances of unequal treatment."  *Id.* (internal quotation marks omitted).  Rather, "[t]he critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not

exposed." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 25 (1993) (Ginsburg, J, concurring); *see also O'Neal*, 2003 WL 1524664 at *8.

Thus, as more specifically set out in Part 2, the Complaint's allegations regarding the following types of conduct allow the plausible inference that Defendant subjected Plaintiff to an actionable hostile work environment: undermining authority (*see* Compl. ¶¶ 24, 25, 28, 29, 32, 33, 35, 37, 40-44, 50, 51, 53, 54, 62, 70); depriving of training (*see id*. ¶¶ 45, 46, 68, 71); alienation (*see id*. ¶¶ 25, 32, 35, 50, 54, 62, 66, 70); and exclusion (*see id*. ¶¶ 25, 32, 35, 50, 54, 62, 66, 70). *See Gregory*, 243 F.3d at 693; *Tringali v. South Country Central School District*, CV 06—3393, 2007 WL 9710318, at *11 (E.D.N.Y. Jul. 19, 2007).

Plaintiff specifically notes another particularly egregious instance in which Griffith Thomas undermined Plaintiff's authority in a way that also suggested discriminatory animus:

> At approximately the end of the fiscal year in September 2016, Griffith Thomas issued a 2.5% annual earned merit increase limit for MS. KING's entire team for the fiscal year October 1, 2015, through September 30, 2016, despite her team showing high performance in significant areas. In fiscal year 2015-16, Griffith Thomas also provided MS. KING with a 0% earned annual merit salary increase. Prior to this, she had received a salary increase during each year she worked for ARAMARK. Additionally Griffith Thomas directed that Heather Rizzo, who was a high performer, be rated a "0" and receive no salary increase. Under ARAMARK policy and procedure, the General Manager, not the District Manager, is responsible for allocating earned annual merit increases among his or her team. Griffith Thomas undermined MS. KING's authority by directing her as to what salary increase to provide her direct report, Heather Rizzo. Heather Rizzo had previously complained to ARAMARK that Griffith Thomas had asked her to falsify financial information, which she refused to do, and further that she felt that she was being discriminated against, harassed by, and retaliated against by Griffith Thomas because of her sex. In comparison, for fiscal year 2014-15, Griffith Thomas directed MS. KING to rate Jacob Williford a perfect 4 (the highest level), even though Jacob Williford had reported directly to MS. KING for approximately half of that fiscal year. Griffith Thomas never sought MS. KING's input, and MS. KING would not have rated Jacob

22

> Williford a perfect 4.  Griffith Thomas then gave Jacob Williford
> both a 4% raise and a lump sum bonus.

Compl. ¶ 47.

With respect to the second prong of Defendant's argument, the Complaint also contains allegations sufficient to allow the plausible inference that Defendant subjected Plaintiff to a hostile work environment because of her sex.  "[T]he Second Circuit has recognized that even if 'the majority of incidents' cited by a plaintiff are neutral with respect to the plaintiff's protected status, . . . one single discriminatory incident may be enough to allow an inference that those '[f]acially neutral incidents' were also motivated by impermissible discrimination."  *Paul v. Postgraduate Center for Mental Health*, 97 F. Supp. 3d 141, 168-69 (E.D.N.Y. 2015) (quoting *Alfano*, 294 F.3d at 377).  Additionally, "allegations of disparate treatment between men and woman potentially give rise to a reasonable inference that the underlying harassment was motivated by gender." *O'Neal*, 2003 WL 1524664 at *8.

Thus, Griffith Thomas' gender-based demeaning comments about Plaintiff's weight (*see* Compl. ¶¶ 52, 62) allow the inference that facially neutral incidents, all which also contributed to an actionable hostile work environment, were because of her sex.  Additionally, Plaintiff's allegations that Defendant's harassing conduct was directed at her and other female employees (*see* Compl. ¶¶ 47, 75) and the Complaint's "allegations of disparate treatment between men and women" (*see generally* discussion *supra* Part 1) "give rise to a reasonable inference that the underlying harassment was motivated by gender."  *O'Neal*, 2003 WL 1524664 at *8.   These specific allegations link Griffith Thomas's discriminatory intent to the facially sex-neutral harassment the he visited upon Plaintiff, making the facts here distinguishable from *Fleming v. MaxMara USA, Inc.*, in which the plaintiff failed to connect facially sex neutral incidents to the

defendant's discriminatory intent.  *See* 371 Fed. App'x 115, 118 (2d Cir. 2010) (non-precedential summary order).

Thus, Defendant's Rule 12(b)(6) Motion to Dismiss Plaintiff's gender hostile work environment causes of action (Fifth and Sixth) should be denied because the Complaint makes specific, factual allegations that support a minimal inference that Defendant subjected Plaintiff to a severe or pervasive hostile work environment because of her sex.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that Defendant's FED. R. CIV. P. 12(b)(6) partial Motion to Dismiss be denied in its entirety.  Defendant's Rule 12(b)(6) motion should be denied because the Complaint's allegations allow for the plausible inference that the NYSHRL provides Plaintiff a private cause of action against Defendant.  Defendant's Rule 12(b)(6) motion should be denied because the Complaint alleges substantial facts supporting the inference that Defendant was motivated by discriminatory intent.  And Defendant's Rule 12(b)(6) motion should be denied because the Complaint alleges substantial facts supporting the inference that Defendant subjected Plaintiff to a severe or pervasive hostile work environment because of her sex.  Should the Court grant any portion of Defendant's Rule 12(b)(6) motion, Plaintiff respectfully requests the opportunity to replead.  *See Porat v. Lincoln Towers Community Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006) (finding it an abuse of discretion where trial court fails to allow repleading after grant of Rule 12(b)(6) motion).

Dated:  Buffalo, New York
       April 5, 2019

                                   s/Josephine A. Greco
                                   Josephine A. Greco, Esq., of Counsel
                                   Earl K. Cantwell, III, Esq.
                                   GRECO TRAPP, PLLC
                                   Attorneys for Plaintiff

Office and Post Office Address
1700 Rand Building, 14 Lafayette Square
Buffalo, New York 14203
Telephone Number: (716) 856-5800
E-mail Address: jgreco@grecolawyers.com