**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

KRISTEN KING,

Plaintiff,

-against-

ARAMARK SERVICES, INC.,

Defendant.

Civil Action No. 1:19-cv-00077

*Electronically filed*

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER**
**SUPPORT OF ITS PARTIAL MOTION TO DISMISS THE COMPLAINT**

**HODGSON RUSS LLP**

Patrick E. Fitzsimmons
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, New York 14202

**MORGAN, LEWIS & BOCKIUS LLP**

Chelsea L. Conanan
101 Park Avenue
New York, New York 10178

OF COUNSEL

Anne E. Martinez (*pro hac vice application forthcoming*)
1701 Market Street
Philadelphia, PA 19103

*Attorneys for Defendant*
*Aramark Services, Inc.*

Table of Contents

Page

I.      INTRODUCTION ...................................................................................................... 1

II.     ARGUMENT .............................................................................................................. 1

    A.      Plaintiff Has Not Established A Viable NYSHRL Claim ..................................... 1

    B.      Plaintiff Has Not Plausibly Alleged Harassment Or Discrimination Claims ........ 6

III.    CONCLUSION........................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bass v. World Wrestling Fed'n Entm't, Inc.*,
    129 F. Supp. 2d 491 (E.D.N.Y. 2001) ...................................................................................4

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002)....................................................................................................2

*Curto v. Med. World Commc'ns, Inc.*,
    388 F. Supp. 2d 101 (E.D.N.Y. 2005) ...................................................................................6

*Forrest v. Brinker Int'l Payroll Co., LP*,
    511 F.3d 225 (1st Cir. 2007)...................................................................................................7

*Int'l Healthcare Exch., Inc. v. Glob. Healthcare Exch., LLC*,
    470 F. Supp. 2d 345 (S.D.N.Y. 2007)................................................................................3, 5

*Kanios v. UST, Inc.*,
    No. 03-369, 2005 WL 3579161 (D. Conn. Dec. 30, 2005) ....................................................7

*Ortega v. New York City Off-Track Betting Corp.*,
    No. 97-7582, 1999 WL 342353 (S.D.N.Y. May 27, 1999) ....................................................7

*Sawka v. ADP, Inc.*,
    No. 13-754, 2015 WL 5708571 (D. Conn. Sept. 29, 2015)....................................................7

*Taperell v. Tegan Lighting, Inc.*,
    No. 18-3343, 2019 WL 1118053 (E.D.N.Y. Mar. 11, 2019)...................................................5

*Thompson v. New York City*,
    No. 12-8034, 2013 WL 6409326 (S.D.N.Y. Dec. 9, 2013) .................................................8, 9

## I.  <u>INTRODUCTION</u>

Plaintiff's Memorandum of Law in Opposition to the Partial Motion to Dismiss (the "Opposition" or "Pl. Opp.") cannot save her claims under the NYSHRL.  She has not pled facts sufficient to establish that she was a New York resident when she allegedly suffered discrimination, or that any of the alleged discriminatory acts she complained of had more than a minimal connection to New York.  None of the cases Plaintiff cites stand for the proposition that the tenuous connections she alleges to New York are sufficient for coverage under the NYSHRL.

Nor does the Opposition rehabilitate Plaintiff's claims of gender discrimination and hostile work environment under Title VII.  She has not pled facts sufficient to suggest that any of the alleged discriminatory acts occurred because of her gender.  And she falls far short of the "severe or pervasive" standard required to plead a claim of hostile work environment.

For all of these reasons, the Court should grant the Partial Motion to Dismiss.

## II.  <u>ARGUMENT</u>

### A.  <u>Plaintiff Has Not Established A Viable NYSHRL Claim.</u>

The parties agree that the NYSHRL only protects against discriminatory acts committed (1) in New York state or (2) against a New York state resident.  Def. Mem. at 4; Pl. Opp. at 6-7.  The discriminatory acts that form the basis of Plaintiff's claims do not meet either of these criteria, and therefore the Court should dismiss those claims.

The Complaint and Opposition spend a lot of time establishing that Plaintiff was a New York resident *before* she worked for Aramark Services Inc.[1] ("Aramark") at its account with Valley Health System ("VHS") and *after* she worked at the VHS account (*see* Compl. ¶¶ 3, 10,

---

[1]     From June 2006 to June 2010, Plaintiff worked in New York for Aramark Healthcare Support Services, LLC, which is a different entity than Aramark Services, Inc., which employed her from April 2012 to September 21, 2017 in Virginia.

1

12, 76; Pl. Opp. at 1-4, 7-11).  Plaintiff's own factual allegations also establish, however, that she was a Virginia resident during the only relevant time period: from "early 2016" (*i.e.*, when Griffith Thomas allegedly started harassing or discriminating against her) to September 21, 2017 (*i.e.*, when her employment terminated).  *See* Compl. ¶¶ 24-73; Pl. Opp. at 3, 13-15.

Plaintiff's argument that she was domiciled in New York during the relevant time, despite admittedly maintaining a residence in Virginia, is not supported by the facts.  Unlike the plaintiff in the *Torrico v. IBM Corp.* decision cited in the Opposition (Pl. Opp. at 7-8), who had a permanent job in New York and a temporary assignment in Chile such that the court found his domicile was in New York, Plaintiff's permanent[2] job was in Virginia.  Virginia is also where Plaintiff had a home for at least five years, where she had a driver's license for at least five years,[3] where she "travel[ed] frequently between these [VHS] facilities" as part of her job duties, where she identified, under penalty of perjury, her home address on at least one I-9 form, and where she listed as her home address on her resume.[4]  Def. Mem. at 1-2, 5-6.  While the Opposition argues she "regularly" worked from her New York home office (Pl. Opp. at 2, 10, 11), her own allegations indicate she only worked from her New York home office less than

---

[2]     Any argument that Plaintiff considered her job on the VHS account as "temporary" would be inconsistent with the fact that she worked there for over five years, obtained a Virginia driver's license, repeatedly identified her home address as in Virginia, and applied for Mr. Thomas' District Manager position (*see* Compl. ¶ 20), which also necessitated that the individual holding it reside in Virginia (*see* G. Thomas Declaration, Docket No. 6-2, at ¶ 6).

[4]     The Opposition urges the Court not to consider her Virginia driver's license, I-9, or resume because "Plaintiff did not . . . 'heavily' rely on them in drafting her Complaint." Pl. Opp. at 8.  However, none of Plaintiff's cited decisions holds that a court cannot consider a document that is not heavily referenced in the Complaint.  Rather, they held that "[e]ven where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint" (*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).  Plaintiff's Virginia driver's license and I-9 meet that standard.

2

"once a week"[5] for the limited purpose of "catch[ing] up on data review and paperwork." Further, Plaintiff admits she did not work from New York at all after March 21, 2017, when Mr. Thomas allegedly "advised Plaintiff that he would no longer allow her to work from her home office." Compl. ¶ 51; Pl. Opp. at 11. Plaintiff also acknowledges that "her duties as General Manager required that she travel frequently between these [VHS] facilities," including to provide "leadership" to the employees who she managed, conduct "quality assurance assessments," and attend "client meetings." Compl. ¶¶ 14, 34.

The Opposition also tries to save the NYSHRL claims from dismissal by relying on distinguishable decisions. First, the Opposition incorrectly suggests that *International Healthcare Exchange, Inc. v. Global Healthcare Exchange, LLC* establishes that a plaintiff can maintain NYSHRL claims simply because the defendant "ha[d] a workplace in New York" even if the plaintiff's actual worksite was in a different state. Pl. Opp. at 10. In reality, that decision allowed the plaintiff's NYSHRL claims to proceed because "[her] place of employment was in New York City . . . and the alleged discrimination had its effects there." Indeed, the court distinguished this situation from the one in *Sherwood v. Olin Corp.* where the court dismissed the NYSHRL claims because the plaintiff, who was a New York resident suing a Virginia corporation, based her claims on incidents that allegedly took place in Connecticut where she worked. *Int'l Healthcare Exch., Inc. v. Glob. Healthcare Exch., LLC*, 470 F. Supp. 2d 345, 362 (S.D.N.Y. 2007).

---

[5]     Although the Opposition asserts that "[f]rom between December 2015 and March 2016, Plaintiff _worked_ exclusively from her New York home office and _regularly performed Defendant's work_" (Pl. Opp. at 11) (emphasis added), Plaintiff's allegations actually establish that she was not working during this time period, but rather she was on a short-term disability leave of absence following her alleged Achilles surgery, such that she was "unavailable to work" and her "work . . . was backing up because of her absence" (Compl. ¶ 25).

Next, the Opposition claims *Bass v. World Wrestling Federation Entertainment, Inc.* supports the argument that if an employee works across different states, she can maintain NYSHRL claims even if just a portion of the alleged conduct occurred in New York.  However, this decision is distinguishable because there "New York was the situs for *many* of the discriminatory acts" whereas here very few of the alleged acts had even a minimal connection to New York.  *Bass v. World Wrestling Fed'n Entm't, Inc.*, 129 F. Supp. 2d 491, 506 (E.D.N.Y. 2001).  More specifically, only three of the alleged incidents complained of occurred when Plaintiff was in New York:

- When Mr. Thomas was *in Virginia* and Plaintiff was allegedly in New York, he allegedly refused to grant her an extension of time to complete performance reviews for her direct reports who worked in the VHS facilities, *which are only in Virginia and West Virginia*;

- When Mr. Thomas was *in Virginia* and Plaintiff was allegedly in New York, he allegedly asked her to visit all six VHS facilities *in Virginia and West Virginia* over three days; and

- When Plaintiff was allegedly in New York *after her employment termination*, some unidentified Aramark employee(s) told Plaintiff that she had to return her company laptop to her Virginia office and failed to send Plaintiff materials to return it by mail.

Every other event complained of occurred outside of New York:

- When Mr. Thomas was *in Virginia*, he allegedly criticized her job performance and complained to others *in Virginia* about her performance working on the VHS facilities;

- While *in Virginia*, Mr. Thomas allegedly said she could not work from her home office;

- Mr. Thomas allegedly micromanaged operations *in Virginia and West Virginia*;

- When they were *in Virginia*, Mr. Thomas issued discipline to Plaintiff for conduct related to the VHS account *in Virginia and West Virginia*;

- Mr. Thomas allegedly changed the reporting structure such that Jacob Williford, who worked *in Virginia*, stopped reporting to Plaintiff;

- Mr. Thomas allegedly failed to support her with some of the VHS facilities *in Virginia and/or West Virginia*;

- Mr. Thomas allegedly told Plaintiff that she would no longer be dual General Manager of Food and EVS for the VHS account *in Virginia and West Virginia*;

- Mr. Thomas asked for reports related to VHS facilities *in Virginia and West Virginia*;

- Mr. Thomas allegedly directed her to get his approval for any financial decisions exceeding $1,000.00 related to the VHS facilities *in Virginia and West Virginia*;

- Mr. Thomas allegedly met with VHS clients *in Virginia or West Virginia* without her;

- Mr. Thomas allegedly failed to help Plaintiff prepare for or present presentations to clients *in Virginia and/or West Virginia*;

- Mr. Thomas allegedly failed to meet with her *in Virginia* to discuss her PIP;

- Mr. Thomas allegedly made weight-related comments to Plaintiff *in-person in Virginia* (*i.e.*, when he would see her with a lunch tray from their *Virginia* cafeteria); and

- Mr. Thomas and Kelly Barrett informed Plaintiff of termination of her employment with Aramark for the VHS account in *Virginia and West Virginia*.

Pl. Opp. at 10-11, 13-15, 17, 21.

Finally, the Opposition tries to establish that merely having a home office in New York, even if it is seldom used, creates a sufficient connection to New York to allow for NYSHRL claims. Pl. Opp. at 10. However, unlike Plaintiff, who primarily worked in the Virginia area and used her New York home office no more than once a week and stopped using it all together six months before her termination, the plaintiffs in the Opposition's cited decisions worked almost exclusively out of their New York home offices. *See Taperell v. Tegan Lighting, Inc.*, No. 18-3343, 2019 WL 1118053, at *1, 3 (E.D.N.Y. Mar. 11, 2019) (finding plaintiff's New York home office was "situs of her employment or regular workplace" given that defendant hired her as "New York based East Coast Regional Sales Manager located in Great Neck, New York," distributed business cards identifying her as "East Coast Regional Sales Manager Great Neck, NY," had business records showing her business address as in New York, required her to visit New York clients at least 2-3 times per week every other week, and had her conduct daily phone calls and weekly videoconferences in her New York home office); *Int'l Healthcare Exch., Inc.*, 470 F. Supp. 2d at 359 (S.D.N.Y. 2007) (finding "substantial portion" of communications that

occurred when plaintiff was in her New York home office formed substantive basis of her claims); *Curto v. Med. World Commc'ns, Inc.*, 388 F. Supp. 2d 101, 105 (E.D.N.Y. 2005) (finding that at time of alleged harassment, plaintiff primarily worked from her New York home office and only worked once a week at New Jersey office). These types of prolonged, significant, and well-documented connections to New York are absent in the instant case.

Even if Plaintiff could prove that the first three incidents listed above occurred when she was in New York and that she very occasionally did some work in her New York office, such tangential connections to New York do not permit her to maintain a NYSHRL claim. Def. Mem. at 4-5. Critically, the Opposition does not address – let alone, refute – the decisions cited by Aramark, which all involved plaintiffs who, like Plaintiff, seldom worked in New York and, thus, did not have sufficient connections to New York in order to sustain NYSHRL claims. *Id.*

**B.    Plaintiff Has Not Plausibly Alleged Harassment Or Discrimination Claims.**

Even if the Court allows Plaintiff to proceed with her NYSHRL claims, the Court should still dismiss both her NYSHRL and Title VII gender-based harassment and discrimination claims because she fails to plausibly allege that the alleged incidents on which she relies were gender-based or sufficiently severe or pervasive to alter the terms and conditions of her employment.

**1.    Plaintiff Has Not Shown Mr. Thomas Was Motivated By Gender.**

Plaintiff's factual allegations do not show that Mr. Thomas, the only alleged harasser/discriminator, either harassed Plaintiff or discriminated against her "because of" her gender.

While the Opposition asserts "Griffith Thomas referred to Plaintiff in gender-based degrading terms" (Pl. Opp. at 13, 17), Plaintiff has not actually identified any such gender-based comments, which is fatal to her gender-based harassment and discrimination claims. Def. Mem. at 8, 11. Rather Plaintiff continues to rely on Mr. Thomas's alleged comments about her weight, which have absolutely no connection to her gender. Pl. Opp. at 17 (alleging Mr. Thomas looked

at Plaintiff's lunch tray and said "wow you must be hungry," stared with disapproval at her midsection, and said that she should visit the fitness center).

None of the decisions cited on page 17 of the Opposition actually stand for the proposition that comments like these about an employee's weight are "specifically degrading to a woman." One of the cited decisions did not involve any weight-related comments. *See Sawka v. ADP, Inc.*, No. 13-754, 2015 WL 5708571, at \*11 (D. Conn. Sept. 29, 2015) (finding plaintiff, a man who posed nude for Playgirl, was subjected to "explicit references to his sex appeal and physical appearance in photographs, including references to size and state of his genitals" and holding "[b]ecause these comments referred to gender-specific aspects of Mr. Sawka's anatomy, a juror could reasonably conclude they were made because of his sex").

Unlike this case, the other two decisions involved the use of gender-specific slang and other gender-specific commentary. *Kanios v. UST, Inc.*, No. 03-369, 2005 WL 3579161, at \*1, 4, 5 (D. Conn. Dec. 30, 2005) (finding manager "ridiculed the roles that a woman should play in society and included terms, like 'fat bitch,' which are terms specifically degrading to a woman" where manager, among other things, called plaintiff a "fat bitch," said she was emotional because she was a woman, and said "women should be barefoot and pregnant"); *Forrest v. Brinker Int'l Payroll Co., LP*, 511 F.3d 225, 227 (1st Cir. 2007) (noting plaintiff's co-worker said "she was fat and needed to go to the gym," but not relying on that "fat" remark to find gender-based harassment, and instead reasoning "sexually degrading, gender-specific epithets, such as 'slut,' 'cunt,' 'whore,' and 'bitch,' with which [co-worker] barraged [plaintiff] at work, has been consistently held to constitute harassment based upon sex.").

Other courts have found that comments simply about someone's weight are not gender specific. *See Ortega v. New York City Off-Track Betting Corp.*, No. 97-7582, 1999 WL 342353,

at *4 (S.D.N.Y. May 27, 1999) (dismissing Title VII and NYSHRL harassment claims based in part on allegations that male executives frequently made disparaging comments about plaintiff's weight, and finding "[t]hese facts fail to support plaintiff's claim that the actions taken by defendant created an atmosphere that was abusive or hostile because of plaintiff's . . . sex – *i.e.*, that the alleged hostile environment was created . . . sex-related conduct on the part of defendant.").  Since Plaintiff has not identified any gender-specific epithets like those in the Opposition's cited decisions, she has not established Mr. Thomas made gender-based comments.

The Opposition also argues Plaintiff's claims should survive because the Complaint alleges Mr. Thomas treated four male employees (*i.e.*, Jacob Williford, Christopher Harriman, Thomas DeGori, and John Wilson) better than Plaintiff.[6]  Pl. Opp. at 13-16, 23.  However, the factual allegations neither establish that Plaintiff was similarly situated to them in all material respects nor provide a non-speculative basis to conclude that Mr. Thomas treated them better than her based on gender.  Def. Mem. at 11.  Mr. Williford was actually Plaintiff's subordinate, not her peer (Compl. ¶¶ 14, 32; Pl. Opp. 14, 22).  Therefore, he was not similarly situated to her.  Similarly, Messrs. Harriman, DeGori and Wilson, who held different job titles than Plaintiff and worked in different locations than her (Thomas Decl. ¶ 9), were not similarly situated to her.

The decisions on which the Opposition relies involved comparators who had the same position, same location and/or same supervisors as the plaintiffs.  Pl. Opp. at 15.  Additionally, neither the Complaint nor the Opposition includes factual allegations that demonstrate that Mr. Thomas treated them more favorably in situations that were similar in "all material respects" as required to be valid comparators.  *Thompson v. New York City*, No. 12-8034, 2013 WL

---

[6]     While Plaintiff attempts to use Timothy Knight and Brian Marsh as alleged comparators (Compl. ¶¶ 37, 43; Pl. Opp. at 2, 14, 16), neither of them reported to Mr. Thomas (*id.*) and their managers' decisions would not evidence that Mr. Thomas harassed or discriminated against her.

6409326, at *8 (S.D.N.Y. Dec. 9, 2013).  For example, Plaintiff asserts that Mr. Thomas did not discipline her male colleagues for engaging in the same behavior for which she was disciplined (Compl. ¶¶ 28, 42, 61; Pl. Opp. at 13-15), but she has not provided any factual allegations that establish what these men did, that it was the same conduct for which she was disciplined, that Mr. Thomas was aware of their conduct, or other facts relevant to whether they should have been disciplined but were not.  *See Thompson*, 2013 WL 6409326, at *8 (granting motion to dismiss race and gender discrimination claims, finding complaint did not supply basis to assess whether alleged comparators were actually valid comparators treated better based on race or gender when they were not terminated after being accused of sexual harassment or other inappropriate conduct, and reasoning complaint did not allege concretely what comparators were accused of doing, for how long, what evidence was of their misconduct, whether allegations against them were substantiated, or how their conduct compared to plaintiff's conduct).

The Opposition attempts to use artful wording to suggest Mr. Williford replaced Plaintiff in order to try to create the inference of gender discrimination.  This is not the case.  In reality, the new General Manager for VHS is a woman.  Pl. Opp. at 16.  Even Plaintiff's allegations only indicate that Mr. Thomas allegedly had Mr. Williford perform some of her job duties while she was on short-term disability leave, and that Mr. Thomas allegedly "*ma[de] efforts* to remove her from the VHS Proposal," but the Complaint does not allege that he actually succeeded in having her removed from this one project.  Compl. ¶¶ 25-26, 66; Pl. Opp. at 2.

While the Complaint and Opposition assert that Mr. Thomas "also subjected other female directors, managers and supervisors, to discrimination, harassment, hostile work environment, and retaliation" (Compl. ¶¶ 47, 75; Pl. Opp. at 17), they do not include factual allegations to support such assertions.  This does not give rise to a plausible inference of discriminatory intent.

9

As established by the Opening Memorandum, "[t]he fact that Ms. Barrett, _one of the decisionmakers_, is also female weakens any suggestion of a discriminatory bias against Plaintiff." Def. Mem. at 12 (emphasis added). The Opposition tries to discredit this argument by suggesting that Ms. Barrett merely participated in the termination meeting and was not an actual decisionmaker. Pl. Opp. at 18. This is wrong because Ms. Barrett was a decisionmaker.

For these reasons, it is clear that aside from her own subjective beliefs and speculation, Plaintiff has not identified anything that would make it plausible that Mr. Thomas harassed her or discriminated against her "because of" her gender. Thus, her NYSHRL and Title VII hostile work environment claims and discrimination claims fail. Def. Mem. at 8-9, 10-12.

>    **2.    Plaintiff's Allegations Do Not Establish Hostile Work Environment.**

Plaintiff's hostile work environment claims also fail because her allegations do not show harassment that was so sufficiently severe or pervasive as to alter the terms and conditions of her employment. Def. Mem. at 7-8, 9-10. Like the plaintiffs in Aramark's cited decisions (Def. Mem. at 8-10), which the Opposition fails to address or meaningfully distinguish, Plaintiff has alleged nothing more than a series of isolated and mundane workplace interactions and minor indignities spread out over more than a year, which do not establish her hostile work environment claims. _Id._

## III.    <u>CONCLUSION</u>

For the foregoing reasons and those set forth in the Opening Memorandum, Aramark respectfully requests that the Court grant its Partial Motion to Dismiss the Complaint.

Dated: Buffalo, New York
      April 15, 2019

Respectfully submitted,


MORGAN, LEWIS & BOCKIUS LLP

By: */s Chelsea L. Conanan*
Chelsea L. Conanan
101 Park Avenue
New York, NY 10178
Phone: (212) 309-6326
Fax: (212) 309-6001
*chelsea.conanan@morganlewis.com*

OF COUNSEL

Anne E. Martinez (*pro hac vice application
forthcoming*)
1701 Market Street
Philadelphia, PA 19103

HODGSON RUSS LLP

Patrick E. Fitzsimmons
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, NY 14202
Phone: (716) 848-1710
Fax: (716) 961-9965
*pfitzsim@hodgsonruss.com*

*Attorneys for Defendant
Aramark Services, Inc.*

11

## CERTIFICATE OF SERVICE

I, Chelsea L. Conanan, hereby certify that a true and correct copy of the foregoing Reply Memorandum of Law in Further Support of Defendant's Partial Motion to Dismiss the Complaint was filed electronically on April 15, 2019, and is available to all counsel of record for viewing and downloading from the ECF system including:

Josephine A. Greco
GRECO TRAPP, PLLC
1700 Rand Building, 14 Lafayette Square
Buffalo, New York 14203
E-mail Address: *jgreco@grecolawyers.com*

*Attorney for Plaintiff*

*/s/ Chelsea L. Conanan*
Chelsea L. Conanan

12