**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

_____

KRISTEN KING,                                    )
                                                 )
                         Plaintiff,              )
                                                 )
            v.                                   )        Civil Action No. 1:19-cv-00077-GWC
                                                 )
ARAMARK SERVICES, INC.,                          )
                                                 )
                         Defendant.              )
_____)

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Anne E. Martinez (*admitted pro hac vice*)
Charles J. Reitmeyer (*admitted pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Tel.: (215) 963-5718/4841
Fax: (215) 963-5001
*anne.martinez@morganlewis.com*
*charles.reitmeyer@morganlewis.com*

Patrick E. Fitzsimmons
HODGSON RUSS LLP
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, NY 14202
Phone: (716) 848-1710
Fax: (716) 961-9965
*pfitzsim@hodgsonruss.com*

# TABLE OF CONTENTS

**Page(s)**

I.      INTRODUCTION ................................................................................................. 1

II.     STATEMENT OF UNDISPUTED FACTS .......................................................... 1

III.    ARGUMENT ....................................................................................................... 1

A.      The Summary Judgment Standard ........................................................... 1

B.      Claims Based On Pre-September 21, 2017 Incidents Are Time-Barred.................. 3

C.      Ms. King's Gender-Based Harassment Claim Fails As A Matter Of Law. .............. 3

        1.      The Standard For Proving A HWE Claim. ................................. 3

        2.      Her HWE Claim Is Time-Barred. ............................................... 4

        3.      The Alleged Conduct Was Not Because Of Ms. King's Gender............. 5

        4.      The Alleged Conduct Was Not Sufficiently Pervasive Or Regular......... 10

        5.      No Reasonable Person Would Be Detrimentally Affected..................... 11

D.      Ms. King's Discrimination And Retaliation Claims Fail As A Matter Of
        Law.............................................................................................................. 12

        1.      Ms. King Cannot Establish Her *Prima Facie* Case Of
                Discrimination. ............................................................................ 13

                a.      Ms. King Did Not Satisfactorily Perform Her Job. ...................... 13

                b.      Ms. King's Termination Did Not Occur Under
                        Circumstances Giving Rise To An Inference Of
                        Discrimination. ................................................................ 15

        2.      Ms. King Cannot Establish Her *Prima Facie* Case Of Retaliation........... 17

                a.      Ms. King cannot establish a causal connection. ........................... 18

        3.      Ms. King Cannot Establish Pretext........................................... 20

E.      Ms. King's Damages, If Any, Should Be Limited As A Matter Of Law. ........... 23

IV.     CONCLUSION ................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alejandro v. NYC Dep't of Educ.*,
   No. 15-CV-3346, 2017 WL 1215756 (S.D.N.Y. Mar. 31, 2017) ............................................9

*Alfano v. Costello*,
   294 F.3d 365 (2d Cir. 2002) ....................................................................................................6

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ................................................................................................................2

*Bennett v. Hofstra Univ.*,
   842 F. Supp. 2d 489 (E.D.N.Y. 2012) ..................................................................................16

*Bernard v. J.P. Morgan Chase Bank N.A.*,
   No. 08 CIV. 4784, 2010 WL 423102 (S.D.N.Y. Feb. 5, 2010), *aff'd sub nom.*
   *Bernard v. JP Morgan Chase Bank NA*, 408 F. App'x 465 (2d Cir. 2011) ..............................20

*Betterson v. HSBC Bank, USA, N.A.*,
   139 F. Supp. 3d 572 (W.D.N.Y. 2015), *aff'd*, 661 F. App'x 87 (2d Cir. 2016) .......................3

*Brown v. Henderson*,
   257 F.3d 246 (2d Cir. 2001) ................................................................................................3, 6

*Bundschuh v. Inn on the Lake Hudson Hotels, LLC*,
   914 F. Supp. 2d 395 (W.D.N.Y. 2012) ..................................................................................6

*Campbell v. All. Nat'l Inc.*,
   107 F. Supp. 2d 234 (S.D.N.Y. 2000) ..................................................................................15

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ................................................................................................................2

*Clark Cnty. Sch. Dist. v. Breeden*,
   532 U.S. 268 (2001) ........................................................................................................18, 20

*Clark v. NY Elec. & Gas Corp.*,
   67 F. Supp. 2d 63 (N.D.N.Y. 1999) ......................................................................................6

*Clarke v. New York City Dep't of Educ.*,
   No. 18-CV-1850, 2020 WL 6047426 (E.D.N.Y. Oct. 13, 2020) ...........................................11

*Curtis v. Citibank, N.A.*,
   70 F. App'x 20 (2d Cir. 2003) ..............................................................................................17

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Davis-Bell v. Columbia Univ.*,
    851 F. Supp. 2d 650 (S.D.N.Y. 2012)............................................................3, 10, 11

*Dawson v. Bumble & Bumble*,
    246 F. Supp. 2d 301 (S.D.N.Y. 2003), *aff'd*, 398 F.3d 211 (2d Cir. 2005) ................7

*Dister v. Cont'l Grp., Inc.*,
    859 F.2d 1108 (2d Cir. 1988)................................................................................22

*Droutman v. New York Blood Ctr., Inc.*,
    No. 03-CV-5384, 2005 WL 1796120 (E.D.N.Y. July 27, 2005)..........................21

*Edwards v. Rochester Inst. of Tech.*,
    No. 10-CV-6553, 2018 WL 1569357 (W.D.N.Y. Mar. 29, 2018) .........................22

*EEOC v. Morgan Stanley & Co.*,
    132 F. Supp. 2d 146 (S.D.N.Y. 2000)......................................................................9

*Evert v. Wyoming Cty. Cmty. Health Sys.*,
    No. 14-CV-912S, 2017 WL 1832051 (W.D.N.Y. May 8, 2017)..........................9, 15, 17, 23

*Faragher v. City of Boca Raton*,
    524 U.S. 775 (1998)..............................................................................................10

*Ferraro v. Kellwood Co.*,
    440 F.3d 96 (2d Cir. 2006)..............................................................................22, 23

*Ford v. NYC Dep't of Health & Mental Hygiene*,
    545 F. Supp. 2d 377 (S.D.N.Y. 2008)......................................................................7

*Fox v. Costco Wholesale Corp.*,
    918 F. 3d 65 (2d Cir. 2019)......................................................................................4

*Garcia v. Yonkers Bd. of Educ.*,
    188 F. Supp. 3d 353 (S.D.N.Y. 2016)......................................................................5

*Garone v. United Parcel Serv., Inc.*,
    2001 WL 984914 (E.D.N.Y. July 12, 2001)....................................................19, 20

*Greene v. Brentwood Union Free Sch. Dist.*,
    966 F. Supp. 2d 131 (E.D.N.Y. 2013), *aff'd*, 576 F. App'x 39 (2d Cir. 2014)........9

*Greenway v. Buffalo Hilton Hotel*,
    143 F.3d 47 (2d Cir. 1998)..............................................................................23, 24

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Gregory v. Daly*,
   243 F.3d 687 (2d Cir. 2001).........................................................................3

*Hamilton v. Mount Sinai Hosp.*,
   528 F. Supp. 2d 431 (S.D.N.Y. 2007), *aff'd*, 331 F. App'x 874 (2d Cir. 2009).....................15

*Harris v. Forklift Sys.*,
   510 U.S. 17 (1993)..............................................................................3, 10

*Hayden v. Walmart Stores, Inc.*,
   619 F. App'x 22 (2d Cir. 2015) ...................................................................22

*Hughes v. Xerox Corp.*,
   37 F. Supp. 3d 629 (W.D.N.Y. 2014) ...............................................................4

*Jacob v. NYSARC, Inc.*,
   No. 13 CIV. 1677, 2014 WL 6750654 (S.D.N.Y. Dec. 1, 2014).........................................2, 14

*Jean v. Acme Bus Corp.*,
   No. 08-4885, 2012 WL 4171226 (E.D.N.Y. Sept. 19, 2012) .............................................18

*Kamrowski v. Morrison Mgmt. Specialist*,
   No. 05-CV-9234, 2010 WL 3932354 (S.D.N.Y. Sept. 29, 2010)............................................7

*Leiner v. Fresenius Kabi USA, LLC*,
   No. 14-CV-979S, 2019 WL 5683003 (W.D.N.Y. Nov. 1, 2019)............................................21

*Lewis v. City of Norwalk*,
   562 F. App'x 25 (2d Cir. 2014) ...................................................................20

*Liburd v. Bronx Lebanon Hosp. Ctr.*,
   No. 07 Civ. 11316, 2009 WL 900739 (S.D.N.Y. Apr. 3, 2009), *aff'd*, 372 F.
   App'x 137 (2d Cir. 2010).........................................................................11

*Littlefield v. AutoTrader.com*,
   834 F. Supp. 2d 163 (W.D.N.Y. 2011) .............................................................8

*Lu v. Chase Inv. Servs. Corp.*,
   412 F. App'x 413 (2d Cir. 2011) ..................................................................23

*Magadia v. Napolitano*,
   No. 06 CIV. 14386, 2009 WL 510739 (S.D.N.Y. Feb. 26, 2009)............................................4

*Manko v. Deutsche Bank*,
   554 F. Supp. 2d 467 (S.D.N.Y. 2008), *aff'd*, 354 F. App'x 559 (2d Cir. 2009).....................13

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*McNamee v. Starbucks Coffee Co.*,
   914 F. Supp. 2d 408 (W.D.N.Y. 2012) .................................................................14

*Moxley v. NY*,
   No. 1:17-cv-691, 2019 WL 5788440 (W.D.N.Y. Nov. 6, 2019) ....................2, 4, 12

*NLRB. v. Mastro Plastics Corp.*,
   354 F.2d 170 (2d Cir. 1965) .................................................................................24

*Oncale v. Sundowner Offshore Servs., Inc.*,
   523 U.S. 75 (1998) ...............................................................................................10

*Reilly v. Cisneros*,
   835 F. Supp. 96 (W.D.N.Y. 1993) ........................................................................24

*Rosinski v. Am. Axle & Mfg., Inc.*,
   663 F. Supp. 2d 197 (W.D.N.Y. 2009), *aff'd*, 402 F. App'x 535 (2d Cir. 2010) ...................13

*Ryduchowski v. Port Auth. of NY & NJ*,
   No. 96-CV-5589, 1998 WL 812633 (E.D.N.Y. Nov. 19, 1998) .............................23

*Shabat v. Blue Cross Blue Shield*,
   925 F. Supp. 977 (W.D.N.Y. 1996), *aff'd*, 108 F.3d 1370 (2d Cir. 1997) .............12

*Shumway v. UPS, Inc.*,
   118 F.3d 60 (2d Cir. 1997) ................................................................................8, 16

*Szwalla v. Time Warner Cable LLC*,
   670 F. App'x 738 (2d. Cir. 2016) .........................................................................17

*Toliver v. Cmty. Action Comm'n*,
   613 F. Supp. 1070 (S.D.N.Y. 1985), *aff'd*, 800 F.2d 1128 (2d Cir. 1986) .............17

*Weinstock v. Columbia Univ.*,
   224 F.3d 33 (2d Cir. 2000) ...................................................................................21

*Wiley v. Geithner*,
   No. 06-CV-172, 2011 WL 13294966 (E.D.N.Y. Oct. 26, 2011) ............................22

*Williams v. All. Nat'l Inc.*,
   No. 98-7984, 2001 WL 274107 (S.D.N.Y. Mar. 19, 2001), *aff'd sub nom.* 24
   F. App'x 50 (2d Cir. 2001) ...................................................................................13

*Wright v. Eastman Kodak Co.*,
   550 F. Supp. 2d 371 (W.D.N.Y. 2008), *aff'd*, 328 F. App'x 738 (2d Cir. 2009) ...................18

**TABLE OF AUTHORITIES**
(continued)

<u>**Page(s)**</u>

*Ya-Chen Chen v. City Univ. of New York*,
    805 F.3d 59 (2d Cir. 2015).........................................................................................17

**Statutes**

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.................................. *passim*

**Other Authorities**

Fed. R. Civ. P. 56............................................................................................................1

Fed. R. Civ. P. 56(c) ......................................................................................................2

## I.     INTRODUCTION

In order for a plaintiff to establish violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), she must establish that an unlawful discriminatory or retaliatory bias actually motivated the conduct at issue.  It is well-settled the *plaintiff* bears the burden of demonstrating this essential element, without which her claims must fail.  The reason for this burden is clear:  absent such a showing, Title VII becomes a method by which disgruntled employees could challenge the business judgment of employers and turn every workplace tribulation into a federal case.  That is exactly what Kristen King ("Ms. King") has attempted even though the applicable statutory period encompasses only the termination of her employment with Aramark Services, Inc. ("Aramark"). For many reasons outlined below, her claims fail and the Court should grant Aramark's Motion.

If the Court decides that any of Ms. King's claims survive summary judgment, the Court should find that her recoverable damages are significantly limited.  She should not recover any economic damages because she failed to mitigate them.  Alternatively, her economic damages should be limited to three months, which is the total amount of time that she spent looking for work before withdrawing from the labor market.  She should not recover tuition reimbursement benefits equal to the full cost of obtaining a second master's degree because she never enrolled in any master's program during or after her Aramark employment, she has not explained how a second master's degree would have been relevant to her job, and, at most, she would have received $5,250 in tuition reimbursement.

## II.     <u>STATEMENT OF UNDISPUTED FACTS</u>

Aramark incorporates by reference its separate Statement of Undisputed Facts ("SOF").

## III.    <u>ARGUMENT</u>

### A.     <u>The Summary Judgment Standard</u>

Federal Rule of Civil Procedure 56 mandates the entry of judgment against a party who

fails to offer admissible evidence sufficient to establish every element essential to her case and on which that party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327; *Moxley v. NY*, No. 1:17-cv-691, 2019 WL 5788440, at *11 (W.D.N.Y. Nov. 6, 2019) ("[T]he salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to . . . other areas of litigation.").

As the moving party, Aramark has the initial burden of showing the basis for its summary judgment motion, but it is not required to negate Ms. King's claims. *Id.* at 323. Rather, Aramark must only point out that there is an absence of evidence to support her case or, alternatively, offer affirmative evidence that demonstrates that she cannot prove her case. *Id.*

Once Aramark sufficiently supports its Motion, the burden shifts to Ms. King to go beyond the pleadings and present evidence to show that there is a genuine issue for trial. *Id.* at 324. Although the Court must view all evidence in a light favorable to her, the mere existence of some alleged factual dispute will not defeat summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, a dispute must exist over a *material* fact. *Id.* "While the Court must draw all reasonable inferences in the Plaintiff's favor, it need not draw unreasonable inferences at war with undisputed record evidence." *Jacob v. NYSARC, Inc.*, No. 13 CIV. 1677, 2014 WL 6750654, at *8-10 (S.D.N.Y. Dec. 1, 2014).

**B.**     **Claims Based On Pre-September 21, 2017 Incidents Are Time-Barred.**

For a Title VII claim[2] to be timely, the plaintiff must file a charge of discrimination with

the Equal Employment Opportunity Commission (the "EEOC") or equivalent state agency within

300 days of the alleged unlawful practice.  42 U.S.C. § 2000e-5; *Betterson v. HSBC Bank, USA,*

*N.A.*, 139 F. Supp. 3d 572, 582 (W.D.N.Y. 2015), *aff'd*, 661 F. App'x 87 (2d Cir. 2016).  Ms. King

filed her charge on July 18, 2018 (SOF ¶159), which makes claims based on incidents before

September 21, 2017 time-barred and the only timely incident her September 21 discharge.

**C.**     **Ms. King's Gender-Based Harassment Claim Fails As A Matter Of Law.**

Ms. King cannot sustain her gender-based hostile work environment ("HWE") claim.

**1.**     **The Standard For Proving A HWE Claim.**

Gender-based harassment is actionable under Title VII where "the workplace is permeated

with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter

the conditions of the victim's employment and create an abusive working environment."  *Harris v.*

*Forklift Sys.*, 510 U.S. 17, 21 (1993).  The "standard for a hostile work environment claim is

'demanding,' and the plaintiff must prove that the conduct was 'offensive, pervasive, and

continuous enough to amount to a constructive discharge.'"  *Davis-Bell v. Columbia Univ.*, 851 F.

Supp. 2d 650, 672 (S.D.N.Y. 2012).  Ms. King must prove "conduct (1) that is 'objectively' severe

or pervasive – that is, [conduct that] creates an environment that a reasonable person would find

hostile or abusive [the 'objective' requirement], (2) that the plaintiff 'subjectively perceive[s]' as

hostile or abusive [the 'subjective' requirement], and (3) that creates such an environment because

of plaintiff's sex . . . [the 'prohibited causal factor' requirement]."  *Brown v. Henderson*, 257 F.3d

246, 252 (2d Cir. 2001) (alterations in original) (quoting *Gregory v. Daly*, 243 F.3d 687, 691-92

---

[2]       On July 30, 2019, this Court granted in part Aramark's Partial Motion to Dismiss, thereby dismissing Ms. King's claims under the New York State Human Rights Law.  Dkt. No. 16.  Now only her Title VII claims remain.

(2d Cir. 2001)).  Deciding if a reasonable person would find the work environment to be hostile

depends on the "totality of the circumstances," consideration of which includes: "the frequency of

the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a

mere offensive utterance; and whether it unnecessarily interfere[d] with [the plaintiff's] work

performance." *Moxley*, 2019 WL 5788440, at *17 (quoting *Fox v. Costco Wholesale Corp.*, 918 F.

3d 65, 74 (2d Cir. 2019)).

## 2.   Her HWE Claim Is Time-Barred.

Ms. King's HWE claim is premised on a laundry list of time-barred discrete acts that

occurred before September 21, 2017 (e.g., her four disciplinary warnings; her performance

improvement plan ("PIP"); elimination of her dual General Manager role; decision to not give her

a private office at WMC; decision to no longer permit her to work from home one or two days per

week; decision to enforce the Aramark policy not permitting her to get mileage reimbursement for

her normal commute; decision not to give her an extension of time to submit her evaluations of her

subordinates; decision to instruct her to "review decisions with financial impact greater than

$1,000 with District Manager in advance").  SOF ¶¶37-38, 46, 62, 81, 93, 101, 103, 129, 145-148,

168.  Courts in the Second Circuit have rejected similar attempts to base HWE claims on time-

barred discrete events:

> Hostile work environment is not a vehicle for resurrecting time-barred claims of
> discrimination and retaliation; it is a wholly separate cause of action designed to
> address other types of work place behavior, like constant jokes and ridicule or
> physical intimidation. The plaintiff cannot piggyback the discrete adverse acts about
> which he complains onto hostile work environment in order to make them actionable.

*Magadia v. Napolitano*, No. 06 CIV. 14386, 2009 WL 510739, at *17 (S.D.N.Y. Feb. 26, 2009)

(granting summary judgment on Title VII HWE claim where plaintiff was complaining about

discrete, adverse employment decisions concerning promotions, discipline, appraisal, and

employer criticism); *see also Hughes v. Xerox Corp.*, 37 F. Supp. 3d 629, 648 (W.D.N.Y. 2014)

(dismissing Title VII HWE claim where plaintiff pointed to discrete actions, including denial of promotion, disparate disciplining, assignment of menial tasks, relocation to less desirable office, unjust criticism of her performance, and exclusion from meetings, and reasoning that bulk of plaintiff's allegations were based on discrete events that could be used for HWE claim).

While a HWE claim may be "based on events outside the statute of limitations period as long as (1) the acts occurring before the . . . cutoff constitute 'part of the same actionable hostile work environment practice,' and (2) at least one act contributing to the claim occurs within the filing period," Ms. King cannot make that showing here. *Garcia v. Yonkers Bd. of Educ.*, 188 F. Supp. 3d 353, 359 (S.D.N.Y. 2016). Her 300-day statutory period is limited to September 21, 2017 – July 18, 2018. SOF ¶159. Griff Thomas, the only alleged harasser, took no action against her on or after September 21, 2017. SOF ¶¶129, 135, 145-148. The only thing that happened on September 21, 2017 was that Kelly Barrett, with Mr. Thomas on the phone, informed Ms. King of the decision to terminate her at-will employment. SOF ¶145-148. This decision, which was made on September 19, 2017 by two women (i.e., Ms. Barrett and Colleen O'Donnell) who are not alleged harassers (SOF ¶129) based on the findings from Ms. Barrett's investigation, constitutes a discrete act that Ms. King cannot bootstrap to her untimely allegations about Mr. Thomas' alleged harassment. *See Garcia*, 188 F. Supp. 3d at 359 (dismissing Title VII HWE claim on grounds that it was time-barred, and reasoning plaintiff's transfer and eventual termination, which were only incidents within 300-day statutory period, were "discrete acts" and did not constitute continuing violation of discrimination for purposes of HWE claim).

### 3. The Alleged Conduct Was Not Because Of Ms. King's Gender.

Even if the Court determines that Ms. King's HWE claim is not time-barred and that it can consider the alleged incidents occurring prior to September 21, 2017, her allegations still fail to establish her HWE claim because she has no evidence that Mr. Thomas harassed her because of

her gender.  *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) (affirming decision granting summary judgment on Title VII gender-based HWE claim).  Indeed, the Court of Appeals for the Second Circuit has explained:

> Everyone can be characterized by sex, race, ethnicity, or (real or perceived) disability; and many bosses are harsh, unjust, and rude. It is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination. Otherwise, the federal courts will become a court of personnel appeals

*Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002); *see also Bundschuh v. Inn on the Lake Hudson Hotels, LLC*, 914 F. Supp. 2d 395, 404 (W.D.N.Y. 2012) (granting summary judgment where plaintiff failed to identify gender-based comments or conduct, and reasoning allegations of facially-neutral conduct were insufficient to establish gender-based HWE claim).

There is no evidence that Mr. Thomas harassed Ms. King "because of" her gender.  She does not allege that he made any sexual comments to her or engaged in any sexual conduct towards her.  SOF ¶173.  Almost all of her allegations involve normal workplace interactions (*e.g.*, disciplining her; placing her on a PIP; enforcing policy of no reimbursement for normal commute mileage; not permitting her to work from home one or two days per week; requiring her to share an office; micromanaging her).  SOF ¶¶163-175.  His other alleged conduct, even if considered rude or inconsiderate, does not relate to gender (*i.e.*, speaking to her with a condescending tone; criticizing her facilities in front of other managers).  SOF ¶168.  The fact that her replacement was a woman further weakens any inference that Mr. Thomas had gender-based animus.  SOF ¶149; *see Clark v. NY Elec. & Gas Corp.*, 67 F. Supp. 2d 63, 73 (N.D.N.Y. 1999) (noting the fact that plaintiff's permanent replacement was also female undermines her claims of gender discrimination).  During her deposition, Ms. King also suggested there may have been animosity because Mr. Thomas was upset about the extra work he had to do while she was on FMLA leave (SOF ¶174), which, if true, would not support her gender-based claims.

Ms. King may point to Mr. Thomas' two alleged comments in 2015 and 2016 about the amount of food she had on her lunch tray (i.e., "Wow, you must be hungry" and "Wow, look at that tray" or just "Wow"), his two alleged comments in 2015 and 2016 that she should go to the VHS gym because VHS' CEO would like to see her using their gym, and his alleged disapproving looks at her large stomach. SOF ¶169b-d. Neither his alleged comments nor alleged disapproving looks are associated with gender. *See Ford v. NYC Dep't of Health & Mental Hygiene*, 545 F. Supp. 2d 377, 389 (S.D.N.Y. 2008) (granting summary judgment on Title VII claim because "Ford provides no evidence that her coworkers' looks and abusive comments – like 'fat fish' . . . were directed at her because she is a woman. The comments, which were certainly disrespectful and rude, indicate her coworkers' general dislike for Ford, but are not objectively indicative of gender animus."); *Kamrowski v. Morrison Mgmt. Specialist*, No. 05-CV-9234, 2010 WL 3932354, at *14 (S.D.N.Y. Sept. 29, 2010) (ruling on summary judgment that comments describing plaintiff as "fat ass" were "certainly rude," but were "gender neutral statements that do not indicate gender animus"). It is not enough for Ms. King to speculate that Mr. Thomas must have made these comments because of discriminatory animus or a sex stereotype. *See Dawson v. Bumble & Bumble*, 246 F. Supp. 2d 301, 319-20 (S.D.N.Y. 2003) (rejecting sex stereotyping argument where comments at issue had no gender content, but rather plaintiff injected gender element into them, and refusing to accept plaintiff's invitation to speculate), *aff'd*, 398 F.3d 211 (2d Cir. 2005).

Ms. King may argue that in that once in 2015, Mr. Thomas allegedly made a joke about women in her presence – although she does not remember anything about the substance of the joke. SOF ¶169a. At best, this joke constitutes a stray remark that should not transform Mr. Thomas' other gender-neutral comments and conduct into gender-based harassment. *See infra* Section III.D.1.b.

Ms. King also cannot point to any men, who were "similarly situated" to her "in all material respects" and treated more favorably than her in comparable situations. *Littlefield v. AutoTrader.com*, 834 F. Supp. 2d 163, 168 (W.D.N.Y. 2011) (granting summary judgment on Title VII claims where plaintiff failed to identify valid comparators).  Of her five alleged comparators (i.e., Tom DeGori, Chris Harriman, Jeff Soloway, Jacob Williford, and John Wilson), two of them were her subordinates (i.e., Mr. Soloway and Mr. Williford) and the remaining three of them (i.e., Mr. DeGori, Mr. Harriman and Mr. Wilson) were not General Managers for a six-hospital system during the relevant time period (i.e., 2/1/15 – 9/21/17)[3] like Ms. King was.  SOF ¶8, 15-16, 167, 168.  The record evidence also shows that men did receive the same treatment by Mr. Thomas, Ms. King did not actually suffer some of the alleged mistreatment, and/or there are legitimate reasons for the differences in treatment that have nothing to do with her gender.  SOF ¶168.  There is also no evidence that any of her five alleged comparators engaged in conduct comparable to Ms. King's conduct that resulted in disciplinary warnings or termination, let alone repeatedly exhibited poor job performance like Ms. King had.  SOF ¶168; *Shumway v. UPS, Inc.*, 118 F.3d 60, 64-65 (2d Cir. 1997) ("To demonstrate that similarly situated males were treated differently, [plaintiff] has to show that these males engaged in comparable conduct.").

Ms. King may try to bolster her gender-based harassment claim by arguing that Mr. Thomas discriminated against other women (*i.e.*, Theresa Davis, Sondra Davis, Heather Rizzo, Allison Siegel).  SOF ¶170.  Even if Ms. King argues that certain employment actions that Mr. Thomas allegedly took towards these women were allegedly "unfair," she must point to evidence, such as gender-based comments or similarly situated comparator evidence, to establish that he took these actions because of their gender, which she does not have.  Furthermore, alleged

---

[3]      Ms. King did not start reporting to Mr. Thomas until February 1, 2015 and her employment with Aramark, and, therefore, Mr. Thomas' supervision of her, ended on September 21, 2017.  *See* SOF ¶¶24, 145-148.

discrimination against others does not establish that Mr. Thomas harassed Ms. King because of her gender. *See generally Alejandro v. NYC Dep't of Educ.*, No. 15-CV-3346, 2017 WL 1215756, at *12 (S.D.N.Y. Mar. 31, 2017) (granting summary judgment to defendant where plaintiff proffered complaints of discrimination filed against supervisor by other females, and explaining "as-yet unverified charges of . . . other charging parties [ ] do not constitute admissible evidence establishing misconduct by the employer," and "the Court is aware of no authority, and [plaintiff] identifies none, for concluding that a discrimination plaintiff has established a *prima facie* case based entirely – or even primarily – on others' unsupported allegations of harassment directed at them") (quoting *EEOC v. Morgan Stanley & Co.*, 132 F. Supp. 2d 146, 153 (S.D.N.Y. 2000).

Critically, Aramark does not have any record of any of these women making complaints against Mr. Thomas for alleged gender-based harassment or discrimination, let alone any findings that he actually engaged in gender discrimination or gender-based harassment.  SOF ¶ 171.  Even if Ms. King argues that these women told her they complained, she cannot use such inadmissible hearsay unrelated to the events at issue.  *Greene v. Brentwood Union Free Sch. Dist.*, 966 F. Supp. 2d 131, 155-56 (E.D.N.Y. 2013), *aff'd*, 576 F. App'x 39 (2d Cir. 2014).

Since Ms. King has not provided any evidence, beyond bare speculation, that would demonstrate that any of the alleged instances on which she bases her claim occurred "because of" her gender, her HWE claim must fail.  *See Evert v. Wyoming Cty. Cmty. Health Sys.*, No. 14-CV-912S, 2017 WL 1832051, at *5 (W.D.N.Y. May 8, 2017) (granting summary judgment on Title VII gender harassment claim, and explaining "[a] plaintiff's speculations, generalities, and gut feelings, however genuine, when they are not supported by specific facts, do not allow for an inference of discrimination to be drawn.").  Indeed, the fact that women made or were otherwise involved in almost all of the employment decisions that Ms. King attempts to use as evidence of

alleged harassment weakens any inference of gender-based animus.  SOF ¶¶46, 62, 81, 93, 100,

129, 131; *see id.* ("[W]here the plaintiff and the individual whose conduct is at issue are members

of the same protected class, the inference that the conduct constitutes harassment or discrimination

is weakened.").

### 4.   The Alleged Conduct Was Not Sufficiently Pervasive Or Regular.

Even if Ms. King could demonstrate that the allegedly harassing conduct occurred "because

of" her gender (which she cannot), she cannot establish that it was sufficiently "severe or

pervasive" to rise to the level of an actionable hostile work environment.  *Oncale v. Sundowner

Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998).

The Supreme Court has made clear that the standard for judging hostility in the workplace

is "demanding," in order to "ensure that Title VII does not become a general civility code."

*Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (quoting *Oncale*, 523 U.S. at 80).  It is

only "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that

is sufficiently severe or pervasive as to alter the conditions of the victim's employment and create

an abusive working environment" that liability for an employer can attach.  *Oncale*, 523 U.S. at 78

(quoting *Harris*, 510 U.S. at 21).  Simple teasing, offhand comments, and isolated incidents (unless

extremely serious) will not amount to discriminatory changes in the terms and conditions of

employment.  *Faragher*, 524 U.S. at 788.  "The standards for judging hostility are sufficiently

demanding . . . Properly applied, they will filter out complaints attacking the ordinary tribulations

of the workplace, such as the sporadic use of abusive language, gender-related jokes, and

occasional teasing."  *Id.* (quotes omitted).

Judged against these standards, Plaintiff cannot establish that the alleged incidents spread

out over an almost three-year period were sufficiently "severe or regular" to rise to the level of an

actionable HWE.  In *Davis-Bell*, the court considered whether the plaintiff could establish a claim

for hostile work environment where she alleged nine different series of episodic incidents over four years, including: being cursed and yelled at, being imprisoned, having paper thrown at her, having her complaints ignored, false accusations of policy violations and fraud, repeated requests for plaintiff's transfer and reassignment by her supervisor, being overlooked for a promotion, having her promotion not reflected on the company website and verbal abuse and humiliation over two years. Courts have held that such conduct, consisting of many "minor and sporadic" incidents, is not continuous enough to be considered pervasive. *Davis-Bell*, 851 F. Supp. 2d at 672-74; *see also Clarke v. New York City Dep't of Educ.*, No. 18-CV-1850, 2020 WL 6047426, at *8-9 (E.D.N.Y. Oct. 13, 2020) (granting summary judgment on Title VII HWE claim where plaintiff alleged she was subject to daily barrage of criticism, intense scrutiny, micro-management, and being called "fat" by her supervisor, and collecting cases holding intense scrutiny, dismissive comments, barrage of criticism, and micro-management on daily basis are not sufficient); *Liburd v. Bronx Lebanon Hosp. Ctr.*, No. 07 Civ. 11316, 2009 WL 900739, at *8-9 (S.D.N.Y. Apr. 3, 2009) (granting summary judgment on Title VII racial HWE claim, holding conduct not sufficiently severe or pervasive where plaintiff alleged that supervisor ignored and spoke to her harshly at meetings; scolded her for not following chain of command; threatened to transfer her to another department; denied transfer to supervisor of her choice; gave her extra duties; stripped her of other duties; referred to her as "black ass" on three occasions; closely monitored her; gave unrealistic time periods to complete tasks; eliminated programs she had implemented; and ultimately terminated her and replaced her with white female), *aff'd*, 372 F. App'x 137, 139-40 (2d Cir. 2010). Likewise, Ms. King cannot establish a HWE claim.

### 5.    No Reasonable Person Would Be Detrimentally Affected.

Ms. King's "own perception that [her] work environment was hostile is not enough, however, to prevail on [a hostile work environment] claim; it is also necessary that plaintiff's work

environment be ***objectively*** hostile." *Shabat v. Blue Cross Blue Shield*, 925 F. Supp. 977, 982-83 (W.D.N.Y. 1996) (emphasis added), *aff'd*, 108 F.3d 1370 (2d Cir. 1997).  She cannot show that a reasonable person would have been detrimentally affected by the alleged harassment.

While it was undoubtedly unpleasant to be held accountable for, criticized about and disciplined for one's job performance, Ms. Adams' and Mr. Thomas' conduct in issuing the disciplinary warnings as well as Ms. Barrett's and Mr. Thomas' conduct in issuing the PIP and delivering the termination news, which were all done in private meetings, was not physically threatening or humiliating in any material respect.  SOF ¶¶65-66, 83, 95-96, 101-102, 145-148. While she alleges that Mr. Thomas made four weight-related comments, told one joke about women, and repeatedly looked at her stomach in a disapproving fashion, there is no evidence of any accompanying epithets, verbal threats, or violent conduct.  SOF ¶169.  There is no evidence that Mr. Thomas engaged in any violent or threatening conduct.  The alleged conduct is not the type of severe behavior that would cause a reasonable person to find her workplace hostile or abusive.  This is yet another reason Ms. King's gender harassment claim fails.  *See Moxley*, 2019 WL 5788440, at *18-19 (granting summary judgment on Title VII gender harassment claim and reasoning plaintiff failed to show objectively hostile or abusive work environment where harassers did not engage in physically threatening or humiliating conduct).

Since Ms. King simply cannot satisfy the necessary elements of her HWE claim, the Court should grant summary judgment with respect to that claim.

D.     **Ms. King's Discrimination And Retaliation Claims Fail As A Matter Of Law.**

Ms. King cannot establish her claims of gender discrimination or retaliation based on her employment termination.  The Court should grant Aramark summary judgment on these claims.

      **1.**      **Ms. King Cannot Establish Her *Prima Facie* Case Of Discrimination.**

In the absence of direct evidence of gender discrimination, Ms. King's claim is subject to the *McDonnell Douglas Corp. v. Green* burden-shifting framework. *Rosinski v. Am. Axle & Mfg., Inc.*, 663 F. Supp. 2d 197, 203-04 (W.D.N.Y. 2009), *aff'd*, 402 F. App'x 535 (2d Cir. 2010). To establish a *prima facie* case of discrimination, Ms. King must demonstrate: (1) she is a member of a protected class; (2) her job performance was satisfactory; (3) she suffered from an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Id.* If Ms. King can demonstrate a *prima facie* case, the burden shifts to Aramark to articulate a legitimate non-discriminatory reason for the adverse employment action. *Id.* Once Aramark has met its burden, the burden shifts back to Ms. King to prove that Aramark's proffered reason is merely pretextual. *Id.*

      **a.**      **Ms. King Did Not Satisfactorily Perform Her Job.**

Ms. King's *prima facie* case fails because she cannot demonstrate that her job performance was satisfactory.

Satisfactory job performance "depends on the employer's criteria for the performance of the job – not the standards that may seem reasonable to the jury or judge." *Manko v. Deutsche Bank*, 554 F. Supp. 2d 467, 477 (S.D.N.Y. 2008), *aff'd*, 354 F. App'x 559 (2d Cir. 2009). Thus, the "ultimate inquiry is whether [the] performance 'meets his employer's legitimate expectations.'" *Id.* (granting summary judgment on Title VII gender discrimination claim and finding plaintiff did not satisfactorily perform her job where she received five warnings from three supervisors over sixteen-month period, and failed to conform her performance); *see also Williams v. All. Nat'l Inc.*, No. 98-7984, 2001 WL 274107, at *5 (S.D.N.Y. Mar. 19, 2001) (granting summary judgment on Title VII race discrimination claim and noting that "[c]ourts reviewing wrongful termination claims have found that where employees receive consistently poor evaluations or warnings

regarding their performance, the second prong of the *prima facie* case is not satisfied"), *aff'd sub nom.* 24 F. App'x 50 (2d Cir. 2001).

At the time of her employment termination, Ms. King had already received three written warnings and a PIP; she engaged in conduct during her disciplinary meetings that was perceived as disrespectful (e.g., yelled, interrupted); she violated Aramark policy by directing one of her subordinates, Brittany Cubbage, who worked at Page Memorial Hospital, which is over sixty (60) miles away from WMC, to submit for mileage reimbursement after Ms. Cubbage drove Ms. King from her home in Stanley, VA and dropped her off at WMC (one of Ms. King's assigned accounts but not Ms. Cubbage's account), and later approving Ms. Cubbage's mileage reimbursement despite knowing that it was not reimbursable under Aramark policy; and she failed to show-up with requested documentation for her September 18, 2017 PIP meeting despite having a week's notice of what she needed to bring to it. SOF ¶¶65, 69, 81, 84, 93, 101, 103-122, 123-128, 129. No reasonable factfinder could conclude she performed her job satisfactorily and her subjective belief that she had satisfactory job performance cannot defeat summary judgment. *See McNamee v. Starbucks Coffee Co.*, 914 F. Supp. 2d 408, 420 (W.D.N.Y. 2012) (granting summary judgment on Title VII gender discrimination and retaliation claims, explaining "plaintiff's subjective belief that she was performing satisfactorily, by itself, is not sufficient to create a triable issue of fact as to pretext"). Accordingly, her discriminatory discharge claim should fail. *See Jacob v. NYSARC, Inc.*, No. 13 CIV. 1677, 2014 WL 6750654, at *8-10 (S.D.N.Y. Dec. 1, 2014) (granting summary judgment on Title VII claim and finding incidents making up plaintiff's disciplinary history and complaints about her demonstrate she was unqualified for her position).

**b.** **Ms. King's Termination Did Not Occur Under Circumstances Giving Rise To An Inference Of Discrimination.**

Ms. King also cannot establish a *prima facie* case of discrimination because she cannot demonstrate that her employment termination occurred under circumstances that give rise to an inference of unlawful gender discrimination.  As an initial matter, given that the two decisionmakers, Ms. Barrett and Ms. O'Donnell are also female, it does not follow that gender discrimination led to Ms. King's employment termination.  *Evert*, 2017 WL 1832051, at *5.  Even if she could establish that Mr. Thomas should also constitute a decisionmaker because he agreed with the decision and was present for her termination meeting, she does not have any evidence that he had a gender-based bias against her.  *See supra* Section III.C.3.

Ms. King may point to the four comments that Mr. Thomas allegedly made in 2015 and 2016 about the amount of food on her lunch tray and suggestion that she go to the gym because VHS' CEO would like to see her using the gym, the joke that he allegedly made in 2015 about women, and his alleged staring at her large stomach with disapproval to try to support her gender discrimination claim.  These alleged comments and conduct cannot raise any inference of gender discrimination because they are not gender-based on their face, and were in no way related to the decision to terminate Ms. King's employment that was made more than one year – and possibly two years – after Mr. Thomas allegedly made these comments.  *See Hamilton v. Mount Sinai Hosp.*, 528 F. Supp. 2d 431, 446 (S.D.N.Y. 2007) ("The more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination. For example, remarks made by someone other than the person who made the decision adversely affecting the plaintiff may have little tendency to show that the decision-maker was motivated by the discriminatory sentiment expressed in the remark.") (quotation and citation omitted), *aff'd*, 331 F. App'x 874 (2d Cir. 2009); *Campbell v. All. Nat'l Inc.*, 107 F. Supp. 2d 234,

247 (S.D.N.Y. 2000) ("Stray remarks by non-decision-makers or by decision-makers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote form [sic] the date of decision.") (quotation and citation omitted).

Ms. King may try to establish her *prima facie* case by pointing out that Aramark did not terminate the employment of Chris Harriman, who was a Director of Food and Nutrition at another account, for food safety violations that his account had in 2018 and 2021 (*i.e.*, well *after* Ms. King's termination) even though she has no personal knowledge of those alleged violations. "[T]he Second Circuit has held that to establish a *prima facie* case of employment discrimination based on disparate treatment, a plaintiff must be able to show that: (1) his putative comparators 'were subject to the same performance evaluation and discipline standards' and (2) 'the conduct [of the putative comparator] for which the employer imposed discipline was of comparable seriousness.'" *Bennett v. Hofstra Univ.*, 842 F. Supp. 2d 489, 497-98 (E.D.N.Y. 2012).  Aramark did not terminate Ms. King's employment because of any food safety issues.  SOF ¶130.  Unlike Ms. King, there is no evidence that Mr. Harriman had been repeatedly disciplined before being placed on a PIP, defied his supervisor's instructions and violated Aramark policy by essentially having Aramark pay for a non-reimbursable expense, and failed to come prepared for a pre-scheduled PIP meeting.  SOF ¶168.  No jury reasonably could infer that Mr. Harriman was similarly situated to Ms. King for relevant purposes.  *See Shumway*, 118 F.3d at 64 (affirming summary judgment decision on Title VII gender discrimination claim where plaintiff failed to identify similarly situated male employees who engaged in comparable misconduct as her).

Ms. King has no evidence that suggests any of the discharge decisionmakers harbored any gender-based animus against her.  She has not identified any comments that any of them made about her gender.  The fact that Ms. Barrett and Ms. O'Donnell were women undermines any

possible inference of discriminatory animus.  *Toliver v. Cmty. Action Comm'n*, 613 F. Supp. 1070,

1073 (S.D.N.Y. 1985) (granting summary judgment on Title VII gender discrimination claim, and

pointing out that since most decisionmakers were in same protected class as plaintiff, claim of

discrimination was less plausible), *aff'd*, 800 F.2d 1128 (2d Cir. 1986).  The fact that Ms. King's

replacement was a woman further undermines her claim.  *See id.* (reasoning "[plaintiff's]

replacement by another Hispanic woman further undermines her race and gender discrimination

claims.").  Therefore, it is apparent that Ms. King's discrimination claim rests on nothing more

than her own speculation and conclusory allegations, and the Court should dismiss it.  *See Evert*,

2017 WL 1832051, at *5.

> **2.**     **Ms. King Cannot Establish Her *Prima Facie* Case Of Retaliation.**

Retaliation claims under Title VII and the ADA also are analyzed under the *McDonnell*

*Douglas* burden-shifting framework although the ultimate burden of proof standard is even higher.

*Ya-Chen Chen v. City Univ. of New York*, 805 F.3d 59, 70 (2d Cir. 2015).  To make out her *prima*

*facie* case of retaliation, Ms. King must show: (1) she engaged in a protected activity; (2) her

protected activity was known to the relevant decision-makers prior to the employment termination

decision being made; (3) Aramark acted adversely against her by terminating her employment; and

(4) her protected activity was causally connected to her employment termination.  *Curtis v.*

*Citibank, N.A.*, 70 F. App'x 20, 22 (2d Cir. 2003).  If Ms. King meets the elements of her *prima*

*facie ca*se, Aramark must then proffer a legitimate, non-retaliatory reason for Ms. King's

employment termination.  *Id.*  For retaliation claims, "[w]here a defendant presents legitimate

nondiscriminatory reasons for adverse employment actions, a plaintiff may prevail only if she can

show that her participation in the protected activity was the 'but for' cause for the adverse

employment action."  *Szwalla v. Time Warner Cable LLC*, 670 F. App'x 738, 740 (2d. Cir. 2016).

Judged against these standards, the undisputed record evidence firmly establishes that Ms. King's

retaliation claim fails as a matter of law because Ms. King cannot establish her *prima facie ca*se of

retaliation, let alone that her employment termination would not have occurred but-for some

alleged complaint about discrimination.

> **a.    Ms. King cannot establish a causal connection.**

Although Aramark strongly refutes that Ms. King actually complained to any Aramark

manager about alleged harassment or discrimination before her employment termination, Aramark

will accept, for purposes of this Motion only, Ms. King's allegation that she complained about

alleged gender-based harassment and gender discrimination to various managers in 2015 and 2016,

and during her March 27, 2017 or September 19, 2017 calls to the Aramark employee hotline.  Ms.

King still cannot establish her *prima facie ca*se of retaliation under Title VII because of the lack of

a causal connection.  Ms. King must offer more than speculation to establish such a causal

connection.  *See Wright v. Eastman Kodak Co.*, 550 F. Supp. 2d 371, 381 (W.D.N.Y. 2008)

(granting summary judgment on Title VII retaliation claim because plaintiff offers nothing other

than speculation to try to establish causal connection), *aff'd*, 328 F. App'x 738 (2d Cir. 2009).  For

this additional reason, her retaliation claim fails as a matter of law.

It is undisputed that she did not experience any adverse employment action in 2015 or 2016

when she allegedly complained to various managers (i.e., Deb Hetrick, Carmine DiCicco, Timothy

Knight, Alexis Duckett, Sebastian Miller, Michael Sacks and Tracy Miller), who were not

decisionmakers in the decision to terminate her employment, about alleged gender-based

harassment and gender discrimination.  SOF ¶129.  The 2+ year gaps between her alleged

complaints to those non-decisionmakers and the termination decision is not sufficient to establish a

causal connection.  *See Clark Cnty. Sch. Dist. v. Breeden,* 532 U.S. 268, 273-74 (2001) (citing with

approval cases dismissing retaliation claims where three- and four-month periods elapsed between

protected activity and employment termination); *Jean v. Acme Bus Corp.*, No. 08-4885, 2012 WL

4171226, at *12 (E.D.N.Y. Sept. 19, 2012) ("[C]ourts in this Circuit have consistently held that a passage of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation.") (citing cases).

With respect to her alleged complaints to Ms. Adams in August 2016, September 2016, March 2017, and May 2017, and her March 27, 2017 hotline call, which Aramark investigated and found to be without merit (SOF ¶¶86-91), she did not experience any adverse action at that time or at any point thereafter up until the point her termination). To the contrary, she continued to hold the same position with the same responsibilities, earning the same as she had before her complaints. SOF ¶12, 38-39. The 4½- to 12-month gaps between each of her alleged complaints and her termination lacks sufficient temporal proximity to create a causal connection.

With respect to her alleged complaint to Ms. Barrett and Mr. Thomas during her initial PIP meeting, which occurred just over a month before her termination, she still cannot establish a causal connection. Timing alone is insufficient to establish a causal connection. *See Garone v. United Parcel Serv., Inc.*, 2001 WL 984914, at *4 (E.D.N.Y. July 12, 2001) ("Evidence of temporal proximity alone . . . is insufficient as a matter of law to prove the causal connection element of a retaliation claim."). She has no evidence that Ms. Barrett, who made the decision to terminate her employment, harbored any retaliatory animus (*e.g.*, Ms. King has not identified any comments by Ms. Barrett suggesting she was annoyed with Ms. King's complaint and wanted to get even with her). Moreover, the termination decision was based upon a sound investigation into Ms. King's conduct that showed she had violated Aramark policy. SOF ¶¶103-122.

With respect to her September 19, 2017 hotline call, Ms. King may point to the fact her call was on September 19, 2017 and she was not informed of her employment termination until September 21, 2017. However, it is undisputed that Ms. Barrett and Ms. O'Donnell, who made the

termination decision based on the findings from Ms. Barrett's investigation, did not know about Ms. King's September 19 hotline call until September 20, and they had already decided on September 19 to terminate Ms. King's employment.  SOF ¶¶129, 142.  The U.S. Supreme Court and Second Circuit have made clear that "[e]mployers need not suspend previously planned [employment actions] upon discovering that a [complaint has been made], and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality."  *Id.* at 30 (quoting *Clark Cnty.*, 532 U.S. at 272); *Bernard v. J.P. Morgan Chase Bank N.A.*, No. 08 CIV. 4784, 2010 WL 423102, at *17 (S.D.N.Y. Feb. 5, 2010) (granting summary judgment on Title VII retaliation claim; "When discipline or expressed dissatisfaction with job performance has taken place before the plaintiff engages in a protected activity, a causal nexus does not exist between the protected activity and a subsequent adverse action.  Otherwise, an employer who institutes progressive discipline would never be free of a claim of retaliation, so long as the employee complained about unfairness."), *aff'd sub nom. Bernard v. JP Morgan Chase Bank NA*, 408 F. App'x 465 (2d Cir. 2011).  The Court should also keep in mind that Ms. King did not call the Aramark Employee Hotline on September 19 until *after* she was informed that she was being investigated for a violation of the Business Conduct Policy, which could be a terminable offense.  SOF ¶¶119, 139; *see Lewis v. City of Norwalk*, 562 F. App'x 25, 29 (2d Cir. 2014) (affirming decision granting summary judgment on Title VII retaliation claim and noting plaintiff initiated sex harassment complaint in response to being informed he was in danger of being fired).

### 3.    Ms. King Cannot Establish Pretext.

Even assuming Ms. King could establish *prima facie* cases of gender discrimination and/or retaliation – which she cannot – her claims still fail because Aramark had legitimate, non-discriminatory, non-retaliatory reasons to terminate her at-will employment – namely, Aramark's investigation determined that she violated Aramark policy by having Aramark essentially cover the

expense of her normal commute on August 31, 2017 when she had Ms. Cubbage drive and drop

her off at WMC,[4] and then told Ms. Cubbage to submit a mileage reimbursement request that Ms.

King then approved thereby violating Aramark policy, and her continued performance issues,

including not having the requested items for her September 18, 2017 PIP review meeting.  SOF

¶¶21, 129; SOF Ex. C, at PDF pp. 2, 5, 7, 19-20; SOF Ex. O, at pp. 13, 15.  The law is clear that

"[a]n employer's good faith belief that an employee engaged in misconduct is a legitimate reason

for terminating her . . . ."  *Droutman v. New York Blood Ctr., Inc.*, No. 03-CV-5384, 2005 WL

1796120, at *9 (E.D.N.Y. July 27, 2005).

Given Aramark's articulation of such a non-discriminatory, non-retaliatory reason for

terminating Ms. King's at-will employment, the presumption of discrimination and retaliation

arising with the establishment of the *prima facie* case drops from the picture.  *Weinstock v.

Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000).  Ms. King must then come forward with evidence

that Aramark's proffered reason is a mere pretext for actual gender discrimination or that

retaliation was the "but-for" cause of her employment termination.  *Id.*  To do so, Ms. King "must

'produce not simply 'some' evidence, but 'sufficient evidence to support a rational finding that the

legitimate, non-discriminatory reasons proffered by the [employer] were false, and that more likely

than not [discrimination] was the real reason for the [employment action].'"  *Id.* (citations omitted).

---

[4]      Ms. Cubbage and Ms. King's testimony made clear that Ms. Cubbage just dropped Ms. King off on August 31, 2017, which is the date at issue.  *See* SOF ¶¶ 108, 110-113, 117, 119-121.  To the extent that Ms. King tries to change her testimony to suggest that Ms. Cubbage was there to work with her on August 31, 2017, and not just on August 30, 2017 like she testified (SOF ¶121), the Court should still find that Aramark's reason for her termination was legitimate and not pretextual.  At the time that the termination decision was made, Aramark's investigation revealed only that Ms. Cubbage drove Ms. King to WMC to drop her off and did not stay to work at WMC.  SOF ¶¶ 108, 110-113, 117, 119-121.  Courts have found that "even assuming a factual issue regarding whether an employee engaged in the misconduct for which her employer claims she was fired, and even assuming that she did not in fact engage in the misconduct, where the employer presents evidence showing that it believed that she had engaged in the misconduct and based its decision to terminate her on that belief, the employer's error does not constitute pretext."  *Droutman*, 2005 WL 1796120, at *9; *Leiner v. Fresenius Kabi USA, LLC*, No. 14-CV-979S, 2019 WL 5683003, at *8 (W.D.N.Y. Nov. 1, 2019) (same).

Ms. King has not set forth sufficient evidence from which a factfinder could reasonably determine that Aramark's legitimate, non-discriminatory, non-retaliatory reasons for her termination are false. *Wiley v. Geithner*, No. 06-CV-172, 2011 WL 13294966, at *12 (E.D.N.Y. Oct. 26, 2011) (granting summary judgment on Title VII gender discrimination claim because plaintiff failed to satisfy burden of showing that defendant's proffered reasons for its actions were false and that discrimination was its true motivation). Neither her disagreement with the decision nor her self-serving speculation will not suffice. *Ferraro v. Kellwood Co*., 440 F.3d 96, 100 (2d Cir. 2006) (affirming grant of summary judgment in discrimination case where plaintiff's claim of pretext was unsupported by any evidence other than her own speculation); *Edwards v. Rochester Inst. of Tech.*, No. 10-CV-6553, 2018 WL 1569357, at *18 (W.D.N.Y. Mar. 29, 2018) (holding plaintiff's disagreement with her supervisors about her job performance does not create triable issue of fact regarding pretext).

Ms. King may argue that her conduct did not warrant termination. However, her subjective disagreement with Aramark's business determination is insufficient to establish that Aramark's proffered reason was false, or that the true motivation for its decision was unlawful discrimination or retaliation. *See Hayden v. Walmart Stores, Inc.*, 619 F. App'x 22, 24 (2d Cir. 2015) (rejecting plaintiff's argument that defendant's reason for terminating him was a bad one, explaining "it is immaterial to Hayden's federal claims whether Walmart correctly determined that his actions were contrary to its internal policy and/or to state law," and "[e]vidence that an employer made a poor business judgment in discharging an employee generally is insufficient to establish a genuine issue of fact as to the credibility of the employer's reasons.") (quoting *Dister v. Cont'l Grp., Inc.*, 859 F.2d 1108, 1116 (2d Cir. 1988)). Courts in the Second Circuit have made clear that a plaintiff cannot demonstrate pretext merely by second-guessing a defendant's business decisions. *See id.;*

*Evert*, 2017 WL 1832051, at *5 ("The laws prohibiting discrimination in employment were not intended to transform the courts into personnel managers. . . . [District courts] must refrain from intruding into an employer's policy apparatus or second-guessing a business's decision-making process.") (internal quotation omitted); *Ryduchowski v. Port Auth. of NY & NJ*, No. 96-CV-5589, 1998 WL 812633, at *10 (E.D.N.Y. Nov. 19, 1998) (granting summary judgment on Title VII claim, holding plaintiff failed to establish pretext, and reasoning "A bad business decision, assuming one was made, does not amount to a decision based on unlawful discrimination. Evidence that an employer made an unwise business decision is insufficient to establish a genuine issue of fact concerning the legitimacy and credibility of its rationale for downsizing and consequently discharging an employee.").

Ms. King also cannot overcome the basis for Aramark's termination decision by claiming, without evidence, that Aramark actually decided to terminate her employment for pretextual reasons.  Her naked belief is not enough to avoid summary judgment.  *See Lu v. Chase Inv. Servs. Corp.*, 412 F. App'x 413, 417 (2d Cir. 2011) (explaining self-serving and conclusory allegations of pretext cannot defeat summary judgment); *Ferraro*, 440 F.3d at 100 (affirming grant of summary judgment in discrimination case where plaintiff's claim of pretext was unsupported by any evidence other than her own speculation).

### E.   Ms. King's Damages, If Any, Should Be Limited As A Matter Of Law.

Even if Ms. King prevails on any of her claims, which she should not, the Court should significantly limit her recoverable damages.

#### 1.   No Economics Damages Due To Her Failure To Mitigate Them.

Employment discrimination plaintiffs must mitigate their damages. *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 53 (2d Cir. 1998). A discharged employee must "use reasonable diligence in finding other suitable employment[.]"  *Id.*  "In general, a plaintiff fails to mitigate

adequately and therefore is entitled to neither back pay nor front pay to the extent he fails to remain in the labor market, fails to accept substantially similar employment, fails diligently to search for alternative work, or voluntarily quits alternative employment without good reason." *Reilly v. Cisneros*, 835 F. Supp. 96, 99 (W.D.N.Y. 1993). Here, the record demonstrates that Plaintiff has failed to mitigate her damages as a matter of law.

Typically, in order to establish a plaintiff failed to mitigate her economic damages, "the employer has the burden to demonstrate that suitable work existed in the marketplace and that its former employee made no reasonable effort to find it." *Greenway*, 143 F.3d at 53.  However, "an employer . . . is released from the duty to establish the availability of comparable employment if it can prove the employee made no reasonable efforts to seek such employment."  *Id.* at 54. "The underlying rationale [for this exception] is that an employer should not be saddled by a requirement that *it* show other suitable employment in fact existed – the threat being that if it does not, the employee will be found to have mitigated his damages – when the employee, who is capable of finding replacement work, failed to pursue employment at all."  *Id.*

Plaintiff made extremely minimal job search efforts and only during the first few months following her termination (i.e., October 2017, November 2017, and maybe January or February 2018), has not applied to any jobs since November 2017 or January/February 2018, and has not talked to anyone about a potential job since November 19, 2018.  SOF ¶151.  Where, like here, a plaintiff contacts very few prospective employers or stops looking all together, courts have denied economic damage awards. *See NLRB. v. Mastro Plastics Corp.*, 354 F.2d 170, 174 (2d Cir. 1965) ("[A] discriminatee is not entitled to back pay to the extent that he fails to remain in the labor market, refuses to accept substantially equivalent employment, fails diligently to search for alternative work, or voluntarily quits alternative employment without good reason.").  Likewise,

Ms. King should not recover economic damages or they should at least be limited to three months of lost wages, which is total amount of time she looked for work.

### 2.    No Damages For Alleged Lost Tuition Reimbursement Benefits.

Ms. King has represented that a portion of her damages are comprised of the hundreds of thousands of dollars that she would have sought from Aramark as reimbursement for obtaining a second master's degree.  SOF ¶178.  She has not specified what type of master's degree she would have sought or explained how it would have been job related.  SOF ¶179.  She never enrolled in a master's program either during her employment or after her termination.  SOF ¶180.  Even if she had enrolled and Aramark had approved her for tuition reimbursement, she would have only been entitled to $5,250 in tuition reimbursement.  The Court should her claim for allegedly lost tuition reimbursement benefits or, at the very least, limit it to $5,250.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Aramark respectfully requests the Court grant its Motion for Summary Judgment, thereby dismissing all of Ms. King's claims in their entirety with prejudice. If the Court should not dismiss all of Ms. King's claims, it should order that her recoverable damages are significantly limited.  Aramark further reserves the right to file a Reply Memorandum of Law in Further Support of Its Motion for Summary Judgment.

Dated:  November 1, 2021             Respectfully submitted,
       Philadelphia, Pennsylvania

MORGAN, LEWIS & BOCKIUS LLP

By: */s Anne E. Martinez*
Anne E. Martinez (*admitted pro hac vice*)
Charles J. Reitmeyer (*admitted pro hac vice*)
1701 Market Street
Philadelphia, PA 19103
Tel.: (215) 963-5718/4841
Fax: (215) 963-5001
*anne.martinez@morganlewis.com*
*charles.reitmeyer@morganlewis.com*

25

HODGSON RUSS LLP

Patrick E. Fitzsimmons
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, NY 14202
Phone: (716) 848-1710
Fax: (716) 961-9965
*pfitzsim@hodgsonruss.com*