UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KRISTEN KING,

               Plaintiff,

-against-                            Civil Action No. 1:19-cv-00077

ARAMARK SERVICES, INC.,                    *Electronically filed*

               Aramark.

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Anne E. Martinez (*admitted pro hac vice*)
Charles J. Reitmeyer (*admitted pro hac vice*)
MORGAN LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Tel.: (215) 963-5718/4841
Fax: (215) 963-5001
*anne.martinez@morganlewis.com*
*charles.reitmeyer@morganlewis.com*


Patrick E. Fitzsimmons
HODGSON RUSS LLP
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, New York 14202
Phone: (716) 848-1710
Fax: (716) 961-9965
*pfitzsim@hodgonruss.com*

**TABLE OF CONTENTS**

**Page**

I.     CLAIMS BASED ON PRE-SEPTEMBER 21 EVENTS ARE TIME-BARRED. ..............1

II.    KING'S GENDER-BASED HWE HARASSMENT CLAIM FAILS.................................2

     A.     King Has Not Established The Alleged Conduct Was Motivated By Gender..........2

     B.     King Has Not Established The Alleged Harassment Was Severe Or Pervasive.................................................................................................................3

     C.     King Concedes No Reasonable Person Would Be Detrimentally Affected..............4

III.   KING HAS NOT ESTABLISHED A *PRIMA FACIE* CASE OF DISCRIMINATION..............................................................................................4

     A.     There Is No Direct (Or Any) Evidence of Gender Discrimination. .........................4

     B.     King Has Not Established Two Elements Of Her *Prima Facie* Case. ......................5

IV.   KING HAS NOT ESTABLISHED A *PRIMA FACIE* CASE OF RETALIATION. ...........8

V.    KING HAS NOT ESTABLISHED PRETEXT. ...................................................................8

VI.   KING'S DAMAGES SHOULD BE LIMITED AS A MATTER OF LAW. .......................9

     A.     King Is Not Entitled To Any Economic Damages......................................................9

     B.     King Is Not Entitled To Any, Let Alone Significant, Tuition Reimbursement.............................................................................................................10

VII.  CONCLUSION................................................................................................................10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abdu-Brisson v. Delta Air Lines, Inc.*,
   239 F.3d 456 (2d Cir. 2001) ....................................................................................................5

*Baity v. Kralik*,
   51 F. Supp. 3d 414 (S.D.N.Y. 2014) .........................................................................................3

*Bonfiglio v. New York Presbyterian Hospital*,
   No. 10 CIV. 4939 SAS, 2011 WL 2436706 (S.D.N.Y. June 16, 2011).......................................8

*Brown v. Henderson*,
   257 F.3d 246 (2d Cir. 2001) ....................................................................................................5

*Castagna v. Luceno*,
   558 F. App'x 19 (2d Cir. 2014)................................................................................................4

*Chin v. Port Authority of New York and New Jersey*,
   685 F.3d 135 (2d. Cir. 2012) ...................................................................................................2

*Cruz v. Coach Stores, Inc.*,
   202 F.3d 560 (2d Cir. 2000) ....................................................................................................4

*Danzer v. Norden Systems, Inc.*,
   151 F.3d 50 (2d Cir. 1998) ......................................................................................................5

*de la Cruz v. New York City Human Resources Administration Department of Social Services*,
   884 F. Supp. 112 (S.D.N.Y. 1995), aff'd, 82 F.3d 16 (2d Cir. 1996) .........................................5

*Dimitracopoulos v. City of New York*,
   26 F. Supp. 3d 200 (E.D.N.Y. 2014)........................................................................................1

*Edwards v. Rochester Institute of Technology*,
   No. 10-CV-6553-FPG, 2018 WL 1569357 (W.D.N.Y. Mar. 29, 2018).......................................5

*El Sayed v. Hilton Hotels Corporation*,
   627 F.3d 931 (2d Cir. 2010) ....................................................................................................9

*Feingold v. New York*,
   366 F.3d 138 (2d Cir. 2004) ....................................................................................................4

*Grant v. Hazelett Strip-Casting Corporation*,
   880 F.2d 1564 (2d Cir. 1989) ...............................................................................................4, 5

*Hartsell v. Duplex Products, Inc.*,
   123 F.3d 766 (4th Cir. 1997) ......................................................................................4

*Hernandez v. Valley View Hospital Association*,
   684 F.3d 950 (10th Cir. 2012) ....................................................................................4

*Hine v. Mineta*,
   238 F. Supp. 2d 497 (E.D.N.Y. 2003) .......................................................................10

*Hysten v. Burlington Northern and Santa Fe Railway Company*,
   44 F. App'x 411 (10th Cir. 2002) ...............................................................................8

*Johnson v. J. Walter Thompson USA, LLC*,
   224 F. Supp. 3d 296 (S.D.N.Y. 2016) ........................................................................3

*Joseph v. Leavitt*,
   465 F.3d 87 (2d Cir. 2006) .........................................................................................7

*Kinsey v. Cendant Corporation*,
   521 F. Supp. 2d 292 (S.D.N.Y. 2007) .......................................................................10

*Leifer v. New York State Division of Parole*,
   No. CV 04 571 CPS, 2007 WL 203961 (E.D.N.Y. Jan. 24, 2007), vacated in
   part, 391 F. App'x 32 (2d Cir. 2010) .........................................................................4

*Lightfoot v. Union Carbide Corporation*,
   110 F.3d 898 (2d Cir. 1997) .......................................................................................5

*Maturo v. National Graphics, Inc.*,
   722 F. Supp. 916 (D. Conn. 1989) ..........................................................................9-10

*National Railroad Passenger Corporaiton v. Morgan*,
   536 U.S. 101 (2002) ....................................................................................................2

*Patterson v. Oneida*,
   375 F.3d 206 (2d Cir. 2004) .......................................................................................4

*Rasmy v. Marriott International, Inc.*,
   952 F.3d 379 (2d Cir. 2020) .......................................................................................4

*Schiano v. Quality Payroll System, Inc.*,
   445 F.3d 597 (2d Cir. 2006) .......................................................................................4

*Trans World Airlines, Inc. v. Thurston*,
   469 U.S. 111 (1985) ....................................................................................................5

*Woodman v. WWOR–TV, Inc.*,
   411 F.3d 69 (2d Cir. 2005) .........................................................................................7

A review of the papers filed by Kristin King in opposition to Aramark's Motion reveals no basis upon which to conclude there is any material fact in dispute or that Aramark's arguments as to why her claims fail as a matter of law are unsound. She uses irrelevant issues, contradictions of her deposition testimony and unsupported assertions to distract from the lack of evidence to establish her claims. For example, many paragraphs of her Counterstatement of Facts ("CSOF") assert "Plaintiff denies" even though she has no evidentiary basis for her denials. Her papers confirm she has no evidence to support her claims and the Court should dismiss them.

## I.      CLAIMS BASED ON PRE-SEPTEMBER 21 EVENTS ARE TIME-BARRED.

Aramark's moving brief ("Def. Br.") establishes that any incident that occurred before September 21, 2017 is barred Title VII's 300-day statute of limitations. Def. Br. 3. The opposition brief ("Pl. Br.") argues that under the continuing violation doctrine, pre-September 21, 2017 incidents can support a hostile work environment ("HWE") harassment claim. Pl. Br. 2-4. "The 'continuing violation' doctrine applies only to harassment claims," and "is inapplicable to plaintiff's present discrimination and retaliation claims." *Dimitracopoulos v. NYC*, 26 F. Supp. 3d 200, 212 (E.D.N.Y. 2014). Thus, her discrimination and retaliation claims can only be based on her discharge, which is only event that happened within the statutory period. Def. Br. 3.

The continuing violation doctrine also does not save her untimely HWE claim because no incident of harassment occurred within the statutory period. Def. Br. 4-5. It remains undisputed Griff Thomas, the only alleged harasser, did nothing to her *on or after* September 21, 2017. SOF ¶¶129, 135, 145-148. At most, Thomas was present when Kelly Barrett informed King of the termination decision. SOF ¶146. Since King was not involved in the decision-making process, she cannot refute the testimony that Barrett and Colleen O'Donnell made this decision on September 19, 2017 based on Barrett's investigation findings, and that Thomas' only involvement was having their decision reviewed with him, agreeing with it, and being present when Barrett informed her of

it. SOF ¶¶129, 132, 146. Even if the Court considers him to be a decisionmaker, King's argument still fails because the decision was made outside of the statutory period on September 19 and is a discrete act to which this doctrine does not apply. Def. Br. at 5.

None of King's cited decisions allowed HWE claims to proceed based on the continuing violation doctrine where, like here, there was no timely act of harassment or the only timely incident was a discrete act like a discharge. Pl. Br. 2-3. Her citations to *Chin* and *Morgan* are perplexing because they support Aramark's position. In *Morgan*, the Supreme Court held at least one act that is part of the HWE must have been within statutory period, which did not happen here. 536 U.S. 101, 118, 120, 122 (2002). In *Chin*, the Second Circuit held the doctrine did not apply because the HWE claim was, like King's claim, premised on a series of discrete acts. 685 F.3d 135, 156 (2d. Cir. 2012). Likewise, this Court should dismiss King's HWE claim.

II.      **KING'S GENDER-BASED HWE HARASSMENT CLAIM FAILS.**

      A.      **King Has Not Established The Alleged Conduct Was Motivated By Gender.**

The HWE claim also fails because King has no evidence Thomas harassed her "because of" her gender. She has not identified any gender-based comments by him, and instead relies on her own speculation that he made comments about quantity of food on her lunch tray and going to the gym so the VHS CEO could see her, and looked disapprovingly at her stomach, "because she did not represent his stereotypical image of a woman." Pl. Br. 5. King has no evidence that he subscribed to that stereotype and her speculation cannot establish that he did. Def. Br. 7, 9. The evidence also shows that men did receive the same treatment by Thomas, she did not suffer some of the alleged mistreatment, and/or there are legitimate reasons for the differences in treatment that have nothing to do with gender. Def. Br. 8; SOF ¶168.

None of King's cited decisions support her arguments. Pl. Br. 5-6. In *Price Waterhouse*, there were comments explicitly tied to gender (e.g., plaintiff "ha[d] matured from a tough-talking

2

somewhat masculine hard-nosed mgr to . . . much more appealing lady ptr candidate"). 490 U.S. 228, 235 (1989). *Johnson* recognized a supervisor's "snide remark" about the plaintiff eating at a work event was not overtly sexual but given his other sexually explicit and derogatory statements (e.g., women needing to be "raped into submission"), and touching her, this remark, considered in context, could be sexually hostile in nature. 224 F. Supp. 3d 296, 309-11 (S.D.N.Y. 2016). Here, Thomas never said anything that had any connection to King's gender whatsoever.

King makes new allegations that Thomas did not make similar comments to Jacob Williford, Christopher Harriman or Thomas DeGori, who she characterizes as "heavier," or look disapprovingly at their stomachs. Pl. Decl. ¶38. The Court must disregard her allegations as they are not supported by personal knowledge. *See Baity v. Kralik*, 51 F. Supp. 3d 414, 419 (S.D.N.Y. 2014) (disregarding portions of affidavit "contain[ing] a surfeit of improper averments, including statements not based on plaintiff's personal knowledge and conclusory statements that are nothing more than speculation"). King was not present for most interactions between them (SOF ¶166-67), and they were not asked in their depositions if Thomas ever made similar comments to them or looked at their stomachs. Thus, she has no basis to assert he only did these things to her.

**B.      King Has Not Established The Alleged Harassment Was Severe Or Pervasive.**

Despite King's dedication of hundreds of pages of her opposition papers to detailing her allegations of harassment in inflammatory language, it is still clear she did not suffer sufficiently severe or pervasive harassment to establish a HWE claim. Aramark's moving papers address all of her allegations, showing how they amount to nothing more than being held accountable for, criticized about and disciplined for her job performance; four weight-related comments; one joke about women; and disapproving looks at her stomach. Def. Br. 10-12; SOF ¶¶168-172.

Contrary to King's argument (Pl. Br. 8), Aramark's moving brief cites to *Davis-Bell*, along with two other decisions (neither of which King addresses), as good examples of when courts have

3

dismissed HWE claims on summary judgment because the plaintiffs relied on similar (or even less severe) types and frequency of comments and conduct as King relies on, which the courts found were, as a matter of law, insufficiently severe or pervasive. Def. Br. at 10-12. None of King's cited caselaw involved similarly benign conduct as what she has alleged. Pl. Br. 11.[1]

### C.      King Concedes No Reasonable Person Would Be Detrimentally Affected.

Aramark's moving brief establishes no reasonable person would have been detrimentally affected by the routine strife, which was neither violent nor threatening, on which King bases her claim. Def. Br. 11-12. The opposition brief does not challenge Aramark's position or refute the caselaw that it cites, thereby conceding she cannot establish this element of her HWE claim.

### III.      KING HAS NOT ESTABLISHED A *PRIMA FACIE* CASE OF DISCRIMINATION.

### A.      There Is No Direct (Or Any) Evidence of Gender Discrimination.

Despite the opposition brief's assertion (Pl. Br. 13-14), King has no direct evidence of gender discrimination and Aramark properly applies the *McDonnell Douglas* burden shifting framework to her claim. As one of King's cited decisions notes, "direct evidence" would be things like "statements by the employer that it explicitly took . . . sex into account in making an employment decision." *Grant v. Hazelett Strip-Casting Corp.*, 880 F.2d 1564, 1568 (2d Cir. 1989). "Ambiguous statements" and "statements by decisionmakers unrelated to the decisional process

---

[1]The *Hartsell* court dismissed a gender HWE claim, finding four comments directly tied to gender were not sufficiently severe or pervasive where the plaintiff, like King, was not inappropriately touched or propositioned. 123 F.3d 766, 773 (4th Cir. 1997). Three of King's decisions involved religious or race HWE claims based on numerous comments directly tied to race or religion, and sometimes physical or threatening conduct. *Rasmy v. Marriott Int'l, Inc.*, 952 F.3d 379, 383-86 (2d Cir. 2020); *Leifer v. NYS Div. of Parole*, No. 04-571, 2007 WL 203961, at *2, 3, 8 (E.D.N.Y. Jan. 24, 2007), *vacated in part*, 391 F. App'x 32 (2d Cir. 2010); *Feingold v. New York*, 366 F.3d 138, 145, 150-51 (2d Cir. 2004); *Patterson v. Oneida*, 375 F.3d 206, 229-30 (2d Cir. 2004); *Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 954-55 (10th Cir. 2012). Two involved overtly sexual comments, propositions, or touching. *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 600 (2d Cir. 2006); *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 564-65, 70-71 (2d Cir. 2000). One involved gender-explicit comments. *Castagna v. Luceno*, 558 F. App'x 19, 21-22 (2d Cir. 2014).

itself" do not constitute direct evidence. *de la Cruz v. NYC Dep't of Soc. Servs.*, 884 F. Supp. 112, 116 (S.D.N.Y. 1995), *aff'd*, 82 F.3d 16 (2d Cir. 1996). Thomas is only accused of making gender-neutral comments years before and unrelated to the termination decision, and there is no evidence that the decisionmakers took her gender into account when making that decision. Def. Br. 15-17. Her cited decisions are distinguishable – *Abdu-Brisson* did not have direct evidence and others had remarks directly related to protected characteristics made in connection with adverse decisions.[2]

### B.    King Has Not Established Two Elements Of Her *Prima Facie* Case.

The *McDonnell Douglas* framework necessitates the dismissal of King's discrimination claim because she has no evidence that (1) she satisfactorily performed her job, or (2) her termination occurred under circumstances giving rise to an inference of gender discrimination. Def. Br. 13-16. Her speculation and unsupported conclusory allegations are not "evidence." *Id.*

For example, King asserts that she satisfactorily performed her job and points to her prior receipt of raises and bonuses. Pl. Br. 15-16. However, prior good evaluations, especially from a different supervisor, do not establish that her termination was discriminatory. *Edwards v. RIT*, No. 10-CV-6553-FPG, 2018 WL 1569357, at *22 (W.D.N.Y. Mar. 29, 2018). Critically, the undisputed facts show she got three written warnings and a PIP for conduct that she engaged in;[3] violated Aramark policy by instructing a subordinate to drive her to work on August 31, 2017[4] and

---

[2] *Abdu-Brisson v. Delta*, 239 F.3d 456, 466 (2d Cir. 2001); *TWA, Inc. v. Thurston*, 469 U.S. 111, 121 (1985) (finding policy was discriminatory on its face); *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 53 (2d Cir. 1998) (decisionmaker called senior staff "old fogies" and said "[w]e need new blood – new and younger, fresh skills"); *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 913 (2d Cir. 1997) ) (decisionmaker testified age was factor in termination); *Grant*, 880 F.2d at 1569 (justification for decision included age-based stereotypes like older workers are less productive).

[3] King has no evidence proving the items in her warnings or PIP were false. Rather, she tries to justify her conduct, or express disagreement with level, timing or wording of her warnings and PIP.

[4] King's opposition papers impermissibly contradict her testimony by now claiming that Cubbage went to WMC to do work on August 31, as opposed to August 30 like she testified (SOF ¶121). *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) (finding plaintiff cannot defeat summary

submit for mileage reimbursement, and then approving it despite knowing it was not reimbursable; and failed to show-up with requested documentation for her September 18, 2017 PIP meeting.[5] Def. Br. 13-14. The unrefuted precedent held that satisfactory performance depends on the employer's criteria and perception of it, not how the plaintiff, judge or jury perceive it, and granted summary judgment because the plaintiffs could not establish this element of their *prima facie* case due to their receipt of multiple warnings and poor evaluations. *Id.*

King also makes the conclusory assertion she "established an inference of discrimination" for her termination based on "Thomas' comments and conduct, Aramark's failure to follow routine procedures in terminating King and Thomas' disparate treatment between King and her male counterparts". Pl. Br. 16-17. As an initial matter, neither Thomas nor the termination decisionmakers made any comments about her gender. Def. Br. 6-7, 15, 16; *supra* Section II.A. Furthermore, she wholly ignores the fact that the two decisionmakers and her replacement are female, which belies any inference of gender discrimination. Def. Br. 15-16.

King has no evidence that any of her alleged male comparators engaged in conduct comparable to her conduct that resulted in her termination. Def. Br. 8, 16. She tries to argue that Harriman also violated the BCP because a written warning issued to him on December 2018 (*i.e.*, after her termination) notes, "Ongoing, numerous and frequent Food Safety Issues persist," but there is no evidence, like she claims, that these issues lasted "for over a year" or violated "health

---

judgment with factual allegations that contradict her prior testimony). Aramark identified evidence – which King does not refute – that shows when the discharge decision was made, its investigation revealed only that Cubbage drove King to WMC to drop her off and did not stay to work on August 31, as well as applicable caselaw holding that even if King could show that Aramark's conclusions were wrong, such an error does not establish pretext. Def. Br. 21 n.4.

[5] While King's CSOF purports to deny the fact she did not have everything that Thomas asked her to collect (CSOF ¶128), this impermissibly contradicts her testimony that she "did not finish gathering all the items needed for review" and what she had collected was in "a folder that [she] didn't have with [her]." Pl. Dep. at 319:23-320:7; *see supra* Footnote 4.

and safety laws" as needed to constitute a BCP violation. Pl. Br. 18-19; Pl. Ex. JJ; Pl. Ex. R at p. 8.

She also ignores the evidence showing how Harriman's alleged conduct was not comparable

to her misconduct and does not support her gender discrimination claim. Def. Br. 16.

The court should also disregard King's argument that Thomas violated the BCP by

allegedly harassing King and directing Heather Rizzo to change numbers on a report. Pl. Br. 19.

These allegations fail to create an inference of discrimination because (1) he, as her supervisor, was

not similarly situated to her; (2) no one ever found evidence that he engaged in gender-based

harassment, gender discrimination or retaliation; and (3) there is no evidence that Barrett or

O'Donnell were aware of the alleged Rizzo incident (in fact, King's inadmissible hearsay

statement is the only thing she offers for it). *See* SOF ¶¶86-91, 134, 141-44.

She has not established that Barrett's investigation was a "sham" or creates an inference of

discrimination.[6] To the contrary, the evidence shows Barrett did a full investigation of what

happened on August 31, 2017, including reviewing the relevant reimbursement form, which only

said Cubbage "dropped off [King] and then went to work at PMH;" interviewing Cubbage, who

said she dropped King off and then returned to PMH; and interviewing King, who did not say

Cubbage was at WMC on August 31 to do work. SOF ¶¶112-121. While King may wish Barrett

interviewed Williford and Thomas (which makes no sense since they testified that they did not see

Cubbage working at WMC), got signed witness statements instead of verbal ones, or reached a

---

[6] Contrary to King's assertion (Pl. Br. 17, CSOF 114), she has no evidence that Aramark "deviated from its practice and policy relative to investigations and terminations," and Barrett's testimony actually shows her investigation aligned with her training. Barrett Dep. at 27:10-15. Moreover, the *Woodman* and *Joseph* decisions do not hold that a deviation from a policy or practice creates an inference of discrimination. *Woodman* affirmed the dismissal of age discrimination claims and rejected the argument that defendant's deviation from industry practices establishes an inference of discrimination. 411 F.3d 69, 86, 90 (2d Cir. 2005). *Joseph* affirmed the dismissal of claims because plaintiff had no evidence to support an inference of discrimination. 465 F.3d 87, 93 (2d Cir. 2006).

different conclusion, there is no basis to conclude the investigation was a "sham," let alone that the termination decision was the result of gender-based animus.

## IV.      KING HAS NOT ESTABLISHED A *PRIMA FACIE* CASE OF RETALIATION.

King has not identified any evidence to establish a causal connection between her alleged complaints and her termination. She glosses over the fact that none of the decisionmakers knew about her September 19 hotline call until *after* they had made their decision, which precludes her claim from being premised on that call. *Compare* Def. Br. 19-20 *with* Pl. Br. 22. She also has not identified anything that establishes a causal connection between her termination and other alleged complaints. Def. Br. 18-19. Instead, she argues "timing alone meets King's *prima facie* burden," pointing to fact that her termination was two months after her alleged complaint to Barrett (Pl. Br. 22) and ignoring caselaw showing two months is not sufficiently close. Def. Br. 18-19. She also points to Thomas' alleged "discriminatory treatment" of her. Pl. Br. 22. Even if she could prove he *discriminated* against her, this would not prove the decisionmakers fired her in *retaliation* for her alleged complaints. *See Bonfiglio v. NY Presbyterian Hosp.*, No. 10 CIV. 4939 SAS, 2011 WL 2436706, at *3 (S.D.N.Y. June 16, 2011) (explaining a retaliation claim is separate and distinct from discrimination claim); *Hysten v. Burlington N. & Santa Fe R. Co.*, 44 F. App'x 411, 418 n.2 (10th Cir. 2002) (finding racially derogatory remark was not probative of retaliatory animus).

## V.      KING HAS NOT ESTABLISHED PRETEXT.

King relies on "the same evidence that comprised her *prima facie* case, without more" to try to show Aramark's stated legitimate, non-discriminatory, non-retaliatory reasons for her termination (*see* Def. Br. 20-21) were pretextual. Pl. Br. 20, 22-23. This is not enough. Unlike the *Back* plaintiff (Pl. Br. 20), who had "direct evidence" of discrimination given the decisionmakers' repeated comments explicitly linked to gender, King has no such evidence. *Compare supra* Section III.A *with* 365 F.3d 107, 124 (2d Cir. 2004). Neither her belief that her conduct did not warrant

8

termination nor her self-serving speculation can establish pretext. Def. Br. 20-23. Nor can temporal proximity establish pretext. *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010). Without evidence of pretext, the Court should dismiss her claims.

**VI.**    **KING'S DAMAGES SHOULD BE LIMITED AS A MATTER OF LAW.**

        **A.**    **King Is Not Entitled To Any Economic Damages.**

King has only identified six jobs that she applied to in the first few months following her termination. SOF ¶¶151-152. Her assertion that she may have applied to more jobs (CSOF ¶151) does not establish she did. Moreover, she admits she has not worked since September 21, 2017 or spoken to anyone about a potential job since November 19, 2018. SOF ¶¶150-154. Contrary to the opposition brief's assertions (Pl. Br. 25), she has not remained in the labor market, which applicable precedent holds will preclude her recovery of economic damages. Def. Br. 24.

The opposition brief attempts to shift the blame to Aramark by making a new and unsupported allegation that on some unknown date, an unnamed "doctor told her. . . that she was unable to work until she got better." Pl. Br. 24. She did not raise this allegation before now, and she has not identified any document – nor have we not found any – that supports it. While the opposition brief cites her declaration as supporting this allegation, her declaration does not actually show that a doctor told her she is unable to work, but rather it only declares that a doctor told her to focus on her treatment and King herself decided she is unable to work. Pl. Decl. ¶107. For these reasons, the Court should disregard this new allegation.

There is no evidence that King cannot work as a result of the conduct she allegedly experienced at Aramark. In *Maturo* (the post-trial decision that the opposition brief relies on), the plaintiff presented "credible evidence" that her supervisor made numerous sexually explicit comments and threats of violence to her, and repeatedly sexually assaulted her, and that her inability to work was "directly related to and proximately caused by the emotional trauma from the

harassment." 722 F. Supp. 916, 920-22, 926, 928 & n.2 (D. Conn. 1989). In contrast, King has no

evidence that her alleged inability to work resulted from the conduct she allegedly experienced,

which amounts to nothing more than normal workplace strife between a supervisor and

subordinate (*supra* Section II.B), particularly given her history of mental health issues that pre-date

and/or are unrelated to Thomas' alleged harassment (Pl. Dep. 352:6-355:6 – provided for in

camera review). *See Hine v. Mineta*, 238 F. Supp. 2d 497, 501 (E.D.N.Y. 2003) (denying back pay

and front pay, finding "total failure to mitigate in any manner" where plaintiff failed to prove that

her emotional distress prevented her from working, noting "[a]lthough some of [plaintiff's]

emotional problems were evidently caused by the hostile work environment, there was evidence

that she was prone to nervous reactions to certain potentially tense situations on the job"). As such,

King should not be able to recover any economic damages.

    **B.**        <u>**King Is Not Entitled To Any, Let Alone Significant, Tuition Reimbursement**</u>.

        King argues, without legal authority, that it is a question of fact for the jury as to what she

is entitled to in lost tuition reimbursement benefits. Pl. Br. 25. She relies on rampant speculation

that if Aramark had not fired her, she would have completed her application for a doctorate degree

program, been accepted into it, earned that degree, and been approved for some amount of tuition

reimbursement. *Id.* Such alleged damages are far too speculative and warrant dismissal as a matter

of law. *See Kinsey v. Cendant Corp.*, 521 F. Supp. 2d 292, 308 (S.D.N.Y. 2007) (granting

summary judgment on claims for certain damages that were "too speculative to recover").

Alternatively, the Court should limit her damages to $5,250 since it is undisputed that Aramark

limits reimbursement for post-college degrees to this amount. SOF ¶176.

**VII.**    <u>**CONCLUSION**</u>

        For the foregoing reasons and those in Aramark's moving brief, the Court should dismiss

all of King's claims, or, at the very least, limit her recoverable damages.

10

Dated: January 24, 2022
      Philadelphia, Pennsylvania

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP
By: */s Anne E. Martinez*
Anne E. Martinez (*admitted pro hac vice*)
Charles J. Reitmeyer (*admitted pro hac vice*)
1701 Market Street
Philadelphia, PA 19103
Tel.: (215) 963-5718/4841
Fax: (215) 963-5001
anne.martinez@morganlewis.com
charles.reitmeyer@morganlewis.com

HODGSON RUSS LLP

Patrick E. Fitzsimmons
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, NY 14202
Phone: (716) 848-1710
Fax: (716) 961-9965
pfitzsim@hodgsonruss.com

**CERTIFICATE OF SERVICE**

I hereby certify that on January 24, 2022, a true and correct copy of the foregoing Reply

Memorandum of Law in Further Support of Defendant's Motion for Summary Judgment was filed

electronically and is available for reviewing and downloading from the ECF system of the U.S.

District Court for the Western District Of New York, and that I served the same via electronic

filing upon the following:

Josephine A. Greco, Esq.
GRECO TRAPP, PLLC
1700 Rand Building
14 Lafayette Square
Buffalo, New York 14203

Attorneys for Plaintiff Kristen King

*/s Anne E. Martinez*
Anne E. Martinez